# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Opinion on Remand

## STATE OF TENNESSEE v. ROBERT FUSCO

**Appeal from the Circuit Court for Montgomery County**
**No. 40900753     Michael R. Jones**

**No. M2012-01068-CCA-RM-CD -Filed December 6, 2012**

Following a jury trial, the Defendant, Robert Fusco, was convicted of two counts of especially aggravated kidnapping, which were merged, and one count of each of the following offenses: conspiracy to commit aggravated robbery, conspiracy to commit aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. See Tenn. Code Ann. §§ 39-12-101, -12-103, -13-202, -13-304, -13-305, -13-402, -13-403, & -14-403. The trial court determined that the Defendant was a Range II, multiple offender for sentencing purposes and imposed an effective 65-year sentence. We first decided this appeal several months ago in February 2012. See State v. Robert Fusco, No. M2010-01724-CCA-R3-CD, 2012 WL 368224 (Tenn. Crim. App. Feb. 3, 2012). Our decision was vacated by the Tennessee Supreme Court, and the case was remanded to this court for reconsideration in light of State v. White, 362 S.W.3d 559 (Tenn. 2012). We requested and received supplemental briefing from the parties addressing any White issues. When this case was previously before this court, the Defendant raised the following issues: (1) whether the trial court erred in failing to charge the lesser-included offense of attempted especially aggravated kidnapping; (2) whether the assistant district attorney general committed prosecutorial misconduct during closing argument; (3) whether the evidence is insufficient to support his convictions for especially aggravated kidnapping, conspiracy to commit aggravated robbery, and conspiracy to commit aggravated kidnapping; (4) whether his dual convictions for especially aggravated kidnapping and attempted aggravated robbery violate due process concerns because the restraint of the victim was not beyond that necessary to complete the robbery; (5) whether the trial court erred by not merging his two conspiracy convictions because the offenses were the object of the same agreement; (6) whether the trial court erred by using certain out-of-state convictions to enhance his sentencing range; and (7) whether his sentence was excessive.[1] We reissue our previous opinion as follows with a new section dealing with the White issues. Upon further consideration of the facts and circumstances of

---

[1] For the purposes of clarity and brevity, we have renumbered and reordered the issues as stated by the Defendant in his brief.

this case with those in <u>White</u>, we again affirm the Defendant's convictions for especially aggravated kidnapping and attempted aggravated robbery. The case is remanded to the Montgomery County Circuit Court for the entry of corrected judgments to reflect merger of the Defendant's conspiracy convictions. In all other respects, we conclude that there is no reversible error in the judgments of the trial court and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part; Reversed in Part; Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Bryan P. Stephenson, Nashville, Tennessee, for the appellant, Robert Fusco.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; Helen O. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
<u>FACTUAL BACKGROUND</u>

This appeal arises from the November 1, 2007 home invasion of John and Elke Gilreath, who lived in Clarksville and owned a local jewelry store called the Golden Eagle. On June 1, 2009, a Montgomery County grand jury returned an indictment against the Defendant and his co-defendant, Kyle Swim, wherein the Defendant was charged with three counts of especially aggravated kidnapping (alternative theories for the kidnapping of Elke) and one count of each of the following offenses: conspiracy to commit aggravated robbery, conspiracy to commit especially aggravated kidnapping, attempted especially aggravated kidnapping (John), aggravated kidnapping (Elke), attempted aggravated kidnapping (John), attempted aggravated robbery (John and Elke d/b/a Golden Eagle Jewelry), aggravated burglary, and attempted first degree murder (Elke). The Defendant's trial was conducted on September 21 through 24, 2009.

The proof at trial, in the light most favorable to the State, revealed that the Defendant and his 18-year-old co-defendant, Swim, residents of Florida, formulated a plan to rob the Golden Eagle jewelry store in Clarksville, a location chosen by the Defendant. In furtherance of their plan, the two men made five or six trips to Clarksville to gather information. They learned that John and Elke Gilreath were the owners of the jewelry store and that the jewelry store building formerly housed a bank, so they believed a vault filled with large amounts of money was inside the store. They also followed the Gilreaths home from the store and

determined where they lived. Ultimately, the two men contrived to break into the Gilreaths' home, abduct Mr. Gilreath while holding Mrs. Gilreath hostage, and force Mr. Gilreath to take them to the jewelry store after hours to retrieve the valuables inside. During one of their reconnaissance trips, they stayed at a Super Eight motel, and authorities later recovered a receipt signed by Swim, which was entered into evidence.

They executed their plan on November 1, 2007. Some time between 8:30 and 9:00 a.m. that morning, Swim dropped the Defendant off about a block away from the Gilreaths' home on Trahern Lane. The Defendant was armed with two handguns, a 25mm and a 9mm. After gaining entry into the home, the Defendant hid in the laundry room of the house for several hours; Mrs. Gilreath was home when the Defendant entered that morning, but the plan called for them to wait until Mr. Gilreath returned home from work. Throughout the day, the Defendant and Swim exchanged text messages to stay apprised of the Gilreaths' whereabouts. At some point, Mrs. Gilreath left the house and went to the store. When she and Mr. Gilreath returned home in their respective vehicles later that day at approximately 5:10 p.m., Mr. Gilreath went to check the mail, and Mrs. Gilreath went to put something in the laundry room. As Mrs. Gilreath entered, the Defendant jumped out, brandishing a weapon, and said, "I'm here to kill you." The Defendant placed Mrs. Gilreath in a chokehold and held a gun to her head. Mr. Gilreath came running to the kitchen when he heard his wife scream.

As Mr. Gilreath approached, the Defendant pointed his gun at Mr. Gilreath and ordered, "Don't move motherf---er, or I'll kill you, and I'll kill this b---h here." Mr. Gilreath responded, "No, you are not going to kill anybody, and I am going to get my gun and kill you." Mr. Gilreath then ran to his car to retrieve his handgun.

The Defendant "marched" Mrs. Gilreath into the kitchen, spun her around, and slammed her into a door. The Defendant "held her left arm up, stood on one of her feet, and pressed the gun to her forehead." Mrs. Gilreath pleaded with the Defendant and told him that she would give him anything he wanted, and the Defendant replied, "Shut up you f-----g b---h, I am here to kill you. I am going to shoot you." The Defendant then grabbed at Mrs. Gilreath's Rolex watch. As Mrs. Gilreath was bringing her arm down, the Defendant put the gun against it and fired; the bullet went through her arm and into her chest. The Defendant then grabbed Mrs. Gilreath by the hair and pushed her face into the floor, before fleeing.

On his way back inside the home, Mr. Gilreath was met by his wife, who had blood squirting from a wound in her chest. He laid her on her stomach in the front yard and gathered some towels to staunch the bleeding.

Swim relayed that at approximately 5:30 p.m., he was at Linda's Pic-A-Rib on Tenth Street, when the Defendant phoned him and told him that he had shot Mrs. Gilreath and needed to be picked up so they could flee. Before leaving the Pic-A-Rib, Swim asked Melba Cox, an employee of the restaurant, how to get to College Street. Also around 5:30 p.m, one of the Gilreaths' neighbors, Mr. Travis Tarpy, saw a man, who he later identified as the Defendant, running through his backyard and phoned the police. Mr. Tarpy testified that the Defendant was wearing a hooded sweatshirt. Soon after this, Harold McCarver encountered the Defendant, who was on his cell phone, at B & D Garage; the Defendant asked McCarver to direct him to College Street.

Detective Tyler Barrett received a call about the shooting around 5:30 p.m. and began looking for a light-skinned[2] man wearing jeans and a hooded sweatshirt. As Det. Barrett patrolled the area, he was flagged down by several men, who told him that someone was hiding in a nearby building on College Street. Detective Barrett found the Defendant inside the building with a cell phone in one hand and a gun in the other; he ordered the Defendant to get on the ground, but when the Defendant remained standing, Det. Barrett warned him that he would shoot if he did not do as he was told. The Defendant then dove under a nearby truck, and it was only after Officer Bill Van Beber arrived on the scene that the two officers were able to pull the Defendant from underneath the vehicle. The Defendant initially denied having a weapon, but Officer Van Beber removed a 25mm handgun from the Defendant's left rear pocket. Another officer removed a pair of gloves from the Defendant's person, which gloves later tested positive for the presence of gunshot residue.

Swim finally arrived at the building on College Street, and after observing that the Defendant had been taken into custody, he drove back to Florida. Swim was apprehended several months later and incarcerated at the Montgomery County Jail. While there, he encountered the Defendant and asked him why he had shot Mrs. Gilreath. The Defendant answered that he shot her because he was "mad, pissed off."

Detective Tim Anderson interviewed the Defendant shortly after the home invasion, and the Defendant initially denied any involvement in the crime. After the Defendant was told that Mrs. Gilreath would likely survive, the Defendant became more cooperative but still denied shooting Mrs. Gilreath. It was only once Det. Anderson showed the Defendant the text messages between the Defendant and Swim that were recovered from the Defendant's cell phone that the Defendant admitted his involvement. The Defendant claimed that he only intended to fire a warning shot and that the shooting was accidental. He admitted to planning the robbery, researching the Gilreaths prior to entering their home, and hiding in the laundry

---

[2] The exact of color of the assailant's complexion, as opposed to the color of the Defendant's complexion, was disputed at trial.

room. The Defendant also provided information on the whereabouts of the 9mm handgun he discarded as he was fleeing the scene.

Later, officers searched the area between the victims' home and the building on College Street; ultimately, the officers recovered a 9mm handgun in a ditch near the Gilreaths' home. The Rolex watch, originally thought to be stolen, was found several months later inside the Gilreaths' house; the watch was never turned over to the authorities.

At trial, the Defendant testified, claiming that he initially lied to the police to try and protect Swim. He denied that their plan was to kidnap the Gilreaths in order to rob the jewelry store, contending that he accidentally shot Mrs. Gilreath and that they only intended to rob the Gilreaths at their home.

Following the conclusion of proof, the jury convicted the Defendant of two counts of especially aggravated kidnapping, conspiracy to commit aggravated robbery, conspiracy to commit aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. The especially aggravated kidnapping convictions were merged. A sentencing hearing was held, and the trial court determined that the Defendant was a Range II, multiple offender. The trial court ordered the Defendant to serve 10 years for each of the conspiracy convictions, 35 years for the merged especially aggravated kidnapping convictions, 10 years for the attempted aggravated robbery, and 10 years for the aggravated burglary conviction. The sentences for the conspiracy convictions were to be served concurrently with one another but consecutively to the remaining convictions, which were likewise all consecutive terms, resulting in a total effective sentence of 65 years in the Department of Correction. Timely post-trial motions followed.

## ANALYSIS

The Defendant appeals, alleging that the trial court committed multiple errors, both at trial and in sentencing: (1) the trial court erred in failing to charge the lesser-included offense of attempted especially aggravated kidnapping; (2) the assistant district attorney committed prosecutorial misconduct during closing argument; (3) the evidence is insufficient to support his convictions for especially aggravated kidnapping, conspiracy to commit aggravated robbery, and conspiracy to commit aggravated kidnapping; (4) his dual convictions for especially aggravated kidnapping and attempted aggravated robbery violate due process concerns because the restraint of the victim was not beyond that necessary to complete the robbery; (5) the trial court erred by not merging his two conspiracy convictions because the offenses were the object of the same agreement; (6) the trial court erred by using certain out-of-state convictions to enhance his sentencing range; and (7) his sentence was excessive.

*I. Jury Instruction on Attempt*

The Defendant contends that the trial court erred by failing to instruct the jury on attempted especially aggravated kidnapping as a lesser-included offense of especially aggravated kidnapping. The Defendant acknowledges that he did not request the charge but asserts that he nonetheless had a constitutional right that the jury be instructed correctly and completely. Citing to State v. Burns, 6 S.W.3d 453 (Tenn. 1999), the Defendant submits that plain error review is appropriate because reasonable minds could accept the evidence as supporting a conviction of the attempt offense. The State responds that the Defendant has waived review of this issue by failing to request the instruction at trial. The State further contends that plain error review is not warranted because the record on appeal, which does not contain the jury instructions or any findings of fact, does not establish what occurred in the trial court and because the Defendant failed to demonstrate that waiver of the issue was not tactical.

As pointed out by the State, the Defendant failed to make a written request for this jury instruction. "Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). Similarly, our supreme court has held that "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006). Therefore, we conclude that the issue regarding the attempted especially aggravated kidnapping jury instruction is waived because the Defendant failed to file a written request.

However, our supreme court has also made clear that when a jury instruction is waived for failure to request it in writing, an appellate court may still review the issue for plain error. Id. at 230. "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In determining whether plain error review is appropriate, the following factors must be established:

(a) The record . . . clearly establish[es] what occurred in the trial court;
(b) a clear and unequivocal rule of law [has] been breached;
(c) a substantial right of the accused [has] been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). On appeal, the defendant has the burden of

establishing that these five factors are met. State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007) ("Gomez II") (citing State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007)). The appellate court need not consider all five factors if any single factor indicates that relief is not warranted. Smith, 24 S.W.3d at 283.

Addressing the first plain error factor (whether the record clearly establishes what occurred in the trial court), the Defendant admits that the jury instructions are not included in the record on appeal, which is generally a prerequisite for plain error review of a lesser-included offense issue. Despite this admission, he gives the following explanation, making the appropriate citations to the trial record, as to why we should grant plain error review:

> [The Defendant] did not raise this issue in writing before the jury was instructed, but he did raise it in his Motion for New Trial pursuant to T.R.A.P. 3. . . . Additionally, the jury instructions were apparently not included in the record on appeal, and the court reporter did not transcribe the judge's reading of the instructions to the jury. However, the trial court's denial on this ground for relief in its Order denying the Motion for New Trial . . . acknowledges that it did not instruct the jury on "Attempt" with respect to Counts Three and Four (especially aggravated kidnapping).[3] Further, the trial court's reading of the blank verdict form is included in the record on appeal, showing which lesser-included offenses were instructed to the jury.

The Defendant is correct that the trial court's reading of the blank verdict was transcribed and is included in record on appeal, affirmatively showing which lesser-included offenses were charged to the jury. Thus, we conclude that the first plain error factor has been met. See State v. Glyn Dale, No. E2008-01139-CCA-R3-CD, 2010 WL 1241601, at *8 (Tenn. Crim. App. Mar. 31, 2010), perm. app. denied, (Tenn. Aug. 25, 2010).

We begin our determination of whether a clear and unequivocal rule of law has been breached by reviewing the standard established in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), for determining what constitutes a lesser-included offense:

> An offense is a lesser-included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or

---

[3] The jury found the Defendant guilty in Counts 3 and 4 (which charged respectively use of a deadly weapon and where the victim suffers serious bodily injury). Attempt was likewise not charged in Count 5 (which charged to hold the victim as a shield or hostage), but the Defendant was acquitted of this count.

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67. Once a trial court concludes that an offense is a lesser-included offense, then the court must apply the following two-step analysis to determine if a lesser-included offense instruction is warranted:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense. This two-step analysis is practical, can be easily applied by the trial courts, and remains broad enough to preserve both the State's and defendant's rights to consider any lesser-included offenses fairly raised by the proof.

Id. at 469. Generally, "evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002).

Under part (c) of the Burns test, attempted especially aggravated kidnapping is a lesser-included offense of especially aggravated kidnapping. However, "part (c) of the Burns test, . . . applies 'to situations in which a defendant attempts to commit . . . either the crime charged or a lesser-included offense, but no proof exists of the completion of the crime.'" State v. Marcum, 109 S.W.3d 300, 303 (Tenn. 2003) (quoting State v. Ely, 48 S.W.3d 710, 719) (Tenn. 2001)) (emphasis added). In Marcum, the defendant, who was convicted of rape, appealed the denial of his request for an attempted rape instruction. In affirming the trial court's denial, our supreme court reasoned as follows:

The testimony in this case was susceptible of only two interpretations—that the rape occurred or that it did not. The victim's testimony that the defendant forced her to place her mouth "on" his "private part" is evidence that she engaged in fellatio and, therefore, supports a rape instruction. The defendant testified that this event never happened and, further, that he was never left alone with the victim at all. There was no evidence of attempt, and the jury found [the victim] a more credible witness. Thus, no instruction on attempt was warranted.

Id. at 304.

Here, the jury was instructed in Counts 3 and 4 on especially aggravated kidnapping defined as "false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . or [w]here the victim suffers serious bodily " Tenn. Code Ann. § 39-13-305(a)(1) & (4). "A person commits . . . false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a). Attempted especially aggravated kidnapping, which the Defendant argues should have been included in the jury instructions, occurs when a person, "acting with the kind of culpability otherwise required for" especially aggravated kidnapping, does any of the following:

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

The Defendant provides the following rationale to support his contention that an attempt instruction was warranted under the facts:

> The proof showed that [the Defendant's] interaction with Mrs. Gilreath lasted approximately 30 seconds (possibly less). The proof further showed that Mrs.

Gilreath was never restrained beyond [the Defendant's] pointing of the gun at her, and his arm briefly around her. She was never tied up, locked up, or transported beyond her home. She was moved from one side of the kitchen to just beyond the kitchen door, which was a very short distance. Although the proof showed that [the Defendant] had a plan to rob Mrs. Gilreath while inside her home, which depending on how it might have occurred may have in fact risen to the level of especially aggravated kidnapping, no such plan ever occurred.

In its order denying the Defendant's motion for new trial wherein he raised the issue of failure to instruct on the lesser-included offense of attempted especially aggravated kidnapping, the trial court ruled on the issue as follows:

Instruction—attempt to commit especially aggravated kidnapping: the proof established beyond a reasonable doubt that the [D]efendant did complete the act of kidnapping. Kidnapping is a continuing offense. If the [D]efendant had accomplished his desired goal, he may have removed both victims from their home, but such was not required. All of the proof established that the act was completed and an attempt was not raised by the evidence.

It appears the "attempt" aspect of the Defendant's argument, at least in part, focuses on the supposition that the robbery of the home was not completed, and we note that the jury did convict of the lesser-included offense of attempted aggravated robbery.[4] However, this argument ignores the fact that the kidnapping was complete regardless of the completion of any robbery; the two are separate offenses, with separate elements.

The Defendant himself admitted that he placed Mrs. Gilreath in a chokehold, while pointing a gun to her head. After Mr. Gilreath refused to cooperate, the Defendant forced Mrs. Gilreath into the kitchen; Mrs. Gilreath pleaded for leniency all the while. The two then struggled over her Rolex watch, and the Defendant shot her. He then grabbed Mrs. Gilreath by the hair and pushed her face into the floor, before fleeing. The statutory elements of especially aggravated kidnapping do not require a finding that Defendant moved the victim any specific distance or restrained her for any particular length of time in order for the Defendant's actions to substantially interfere with her liberty. See State v. Turner, 41 S.W.3d 663, 670 (Tenn. Crim. App. 2000) ("[N]othing in the especially aggravated kidnapping statutes requires that the victim be removed for a certain distance or be confined for a certain period of time in order for a defendant's actions to amount to a substantial interference with

_____

[4] We later discuss in this opinion that the robbery charge of the indictment delineated the place of the robbery to be at the jewelry store, not at the Gilreaths' home.

-10-

the victim's liberty.") (citation omitted). We find no error in the trial court's finding that the proof established beyond a reasonable doubt that the Defendant completed the act of kidnapping.

Accordingly, the facts of this case simply do not support an attempt instruction. We conclude that the trial court's refusal to give the instruction did not violate a clear and unequivocal rule of law, therefore, it did not constitute plain error. The Defendant is denied relief on this issue.

We also note that, after addressing factor one, the State does not address factors 2 and 3 of Adkisson but instead focuses on the fourth factor in its brief, that the Defendant failed to establish that he did not waive the issue for tactical reasons, citing to State v. Joshua Shannon Sides, No. E2006-01356-CCA-R3-CD, 2008 WL 538983, at *3 (Tenn. Crim. App. Feb. 28, 2008) (refusing to engage in plain error analysis where defendant was unable to show that his waiver of instructions on lesser-included offense was not tactical), perm. app. denied, (Tenn. Aug. 25, 2008). Briefly, we point out that here, just as in Sides, despite any failure to instruct on the lesser-included offense, the invitation for further requests was issued to counsel for both parties, and the Defendant did not request the lesser-included offense or any other instructions. See id. For the foregoing reasons, the Defendant is not entitled to plain error relief.

## II. Closing Argument

The Defendant contends that the prosecutor committed prosecutorial misconduct in her closing argument by expressing her personal opinion and by impermissibly predicting the consequences of a "not guilty" verdict. The Defendant admits that he did not object to the closing argument but asserts that plain error review is appropriate. The State responds that the Defendant has waived the issue because he failed to lodge a contemporaneous objection. The State further asserts that the Defendant cannot establish the need for plain error treatment because he failed to make any argument on the subject in his appellate brief, failing to demonstrate that the alleged misconduct affected a substantial right or that consideration of the alleged error is necessary to do substantial justice.

Initially, we agree with the State that the Defendant failed to contemporaneously object to the comments made by the prosecutor during closing argument, and typically, when a prosecutor's statement is not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 & 36(a); see also State v. Thornton, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Thus, if this court is to review the claim of prosecutorial misconduct, we must again do so through the process of "plain error" review embodied in Rule 36(b). This court will not grant relief on this issue unless

the alleged prosecutorial misconduct rises to the level of "plain error," affecting a "substantial right" of the accused. See Adkisson, 899 S.W.2d at 639. The State argues that, while the Defendant makes a general allegation of plain error, he does so "without making any argument to establish its existence": "He has not demonstrated or even argued that the alleged misconduct affected a substantial right or that consideration of the alleged error is necessary to do substantial justice." Because the Defendant does raise plain error in his brief and supports this issue with some argument, albeit generally without specific delineation to each Adkisson factor, we decline to conclude, on this basis alone, that the Defendant has failed to carry his burden of demonstrating plain error.

Proceeding with a plain error analysis, we note that the closing arguments are transcribed and included in the appellate record; therefore, the first plain error factor is met. We begin our determination of whether a clear and unequivocal rule of law has been breached by re-affirming that trial courts have substantial discretionary authority in determining the propriety of final argument, and although counsel is generally given wide latitude, trial judges must restrict any improper commentary. See Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). Closing arguments must be temperate, must be based upon evidence introduced during trial, and must be relevant to the issues at trial. See State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978). The State should refrain from argument designed to inflame or incite the emotions of the jury. See Coker, 911 S.W.2d at 368.

We have previously observed that there are five generally recognized areas of prosecutorial misconduct related to argument: (1) it is unprofessional conduct for the prosecutor to intentionally misstate the evidence or mislead the jury as to the inferences it may draw; (2) it is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) the prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury; (4) the prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict; and (5) it is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). When a defendant makes allegations of prosecutorial misconduct, on appeal, this court reviews the record to see "whether such conduct could have affected the verdict to the prejudice of the defendant." State v. Smith, 803 S.W.2d 709, 710 (Tenn. Crim. App. 1990). In other words, it will be reversible error if the improper comments of the prosecutor were so improper or the argument so inflammatory that it affected the verdict. See State v. Reid, 164 S.W.3d 286, 344 (Tenn. 2005); Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). The factors to aid us in making this determination include:

(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the [c]ourt and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.

State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); see also Goltz, 111 S.W.3d at 5-6.

The Defendant did raise the issue in his motion for new trial. In denying the motion for new trial, the trial court ruled, "Prosecutor's closing argument: this court finds nothing inappropriate with the argument of the [S]tate as it was a fair comment on the evidence presented." On appeal, the State also contends that the Defendant has failed to demonstrate any prosecutorial misconduct because the prosecutor's statements were innocuous.

Regarding his first assignment of misconduct—that the prosecutor repeatedly used the phrases "I think" and "I don't think" with respect to the credibility of the witnesses and the issue of guilt, thereby impermissibly injecting her personal opinions—the Defendant does not provide in his brief what statements these phrases preface. The Defendant does provide page citations, and we glean from our review of those pages cited that, prior to the first instance the phrase was used, the prosecutor noted the number of exhibits and said that the pace of the presentation was boring but necessary. She then said, "I think when you all saw the evidence, you realized that." We agree with the State that the comment in no way expressed a belief in the truth or falsity of any testimony or evidence or in the guilt of the Defendant.

The next time the phrase was used, the prosecutor said that she did "not think" that several facts were "at issue"—specifically that there was a conspiracy to commit aggravated robbery, that a burglary was committed, and that the Defendant attempted to commit an aggravated robbery, taking a substantial step toward commission of the offense. She further stated that she thought "the evidence weighed out pretty much like" she said it would during opening argument, which statement she followed with a recitation of the facts in the light most favorable to the State. The State correctly notes on appeal that the Defendant testified to these facts and, therefore, the prosecutor aptly stated that they were not "at issue." Not only did the Defendant testify to these facts, but defense counsel admitted the Defendant's guilt in Counts 1 (conspiracy to commit aggravated robbery), 9 (attempted aggravated robbery[5]), and 10 (aggravated burglary) during closing argument. Even if these statements

_____

[5] In closing argument, defense counsel did take issue with whether the attempted aggravated robbery was
(continued...)

amount to misconduct, they were harmless as the Defendant's guilt on those counts was not disputed.

Later toward the conclusion of her initial closing, the prosecutor, addressing the attempted first degree murder charge, stating that she thought the Defendant "planned to kill" when he entered the Gilreaths' home. The Defendant was acquitted of the first degree murder charge. Thus, if the statement amounts to misconduct, the error was harmless.

Next, the Defendant argues error based upon the fourth area of misconduct outlined in Goltz—that the prosecutor diverted the jury from its duty to decide the case on the evidence and predicted the consequences of the jury's verdict. On this basis, the Defendant takes issue with the following actions of the prosecutor during closing argument: she told the jurors to "listen to [their] heart" when considering the evidence[6]; she had the jurors twice pause for 45 seconds—the approximate length of the encounter between the Defendant and Mrs. Gilreath—instructing during the first pause to think about how Mrs. Gilreath felt during that time period and during the second pause to imagine what decisions they could make in that period of time; and she essentially told the jurors to consider how a verdict of not guilty would affect Mrs. Gilreath. We agree with the State that these first three instances were innocuous.

As for the allegation that the prosecutor told the jurors to speculate on how the consequences of the verdict would affect Mrs. Gilreath, the Defendant refers to the following comment made by the prosecutor during rebuttal argument: "You look at Elke Gilreath and you tell her that forty-five seconds of pure terror that this man put her through -- you tell her that that is not kidnapping, that he didn't substantially interfere with her liberty?" Although there may be no commentary on the consequences of an acquittal, the prosecution may point out the gravity of a particular crime and emphasize the importance of law enforcement. See State v. Dakin, 614 S.W.2d 812, 825 (Tenn. Crim. App. 1980); Bowling v. State, 458 S.W.2d 639, 641 (Tenn. Crim. App. 1970). The State submits that this statement was permissible because the prosecutor offered no speculation on the results of the jury's verdict in any way, and the Defendant has failed to explain how the comments instructed the jury to imagine the consequences of the verdict. We agree with the State that this comment did not actually ask the jury to focus on the consequences of an acquittal, but rather focused on the fact, that

---

[5](...continued)
of the jewelry store or of the Gilreaths' home. This matter is addressed later in this opinion.

[6] In bringing the initial argument to a close, the prosecutor surmised, "If you listen to your heart, and this man is guilty. It's easy, there is no doubt."

although short, 45 seconds is a sufficient amount of time to support a conviction for kidnapping.

Under these circumstances, the Defendant has failed to establish that prosecutorial misconduct occurred. Therefore, plain error relief is not warranted, and we need not proceed with an examination of the remaining Adkisson factors. See Smith, 24 S.W.3d at 283 (the appellate court need not consider all five factors if any single factor indicates that relief is not warranted).

### III. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions of especially aggravated kidnapping and conspiracy (to commit aggravated robbery and to commit aggravated kidnapping). Relative to the especially aggravated kidnapping convictions, the Defendant asserts that "the brief time and slight physical distance pertaining to the confinement or removal of Mrs. Gilreath" did not support his conviction for the offense. As for the conspiracy convictions, the Defendant argues that the evidence was insufficient because most of the evidence was provided by the uncorroborated testimony of Swim, his co-defendant and accomplice. The State responds that the evidence was sufficient to sustain the Defendant's three convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct

and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . [and i]f the jury is convinced beyond a reasonable doubt, we can require no more." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the Defendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

### A. Especially Aggravated Kinapping Convictions

The Defendant contends that the evidence is insufficient to support his two convictions for especially aggravated kinapping, arguing that, at most, "the evidence may have supported an attempt to commit that crime." Specifically, he argues that due to "the brief time and slight physical distance pertaining to the confinement or removal of Mrs. Gilreath[,] . . . there was no evidence at trial that Mrs. Gilreath's liberty was interfered with 'substantially' by the confinement or removal."

As we have previously outlined in Section I of this opinion, the Defendant was convicted of especially aggravated kidnapping as charged in Counts 3 and 4, defined respectively as "false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . or [w]here the victim suffers serious bodily " Tenn. Code Ann. § 39-13-305(a)(1) & (4). "A person commits . . . false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a). "'Serious bodily injury' means bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(34). "Deadly weapon," as applicable in this case, means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury[.]" Tenn. Code Ann. § 39-11-106(a)(5)(A).

Our review of the record reveals that the evidence was sufficient for the jury to find the Defendant guilty, beyond a reasonable doubt, of especially aggravated kidnapping. Both Mrs. Gilreath and the Defendant testified that the Defendant placed Mrs. Gilreath in a chokehold, while pointing a gun to her head. When Mr. Gilreath entered the kitchen and saw what was happening in the laundry room, he refused to submit to the Defendant's demands. Mr. Gilreath left to retrieve his weapon from his car, and a struggle ensued between the Defendant and Mrs. Gilreath. The Defendant forced Mrs. Gilreath into the kitchen, and as

-16-

Mrs. Gilreath was bringing her arm down, the Defendant put the gun against it and fired; the bullet went through her arm and into her chest. Her injuries were life-threatening and resulted in permanent impairment to her hand. As stated above, the statutory elements of especially aggravated kidnapping do not require a finding that Defendant moved the victim any specific distance or restrained her for any particular length of time in order for the Defendant's actions to substantially interfere with her liberty. See Turner, 41 S.W.3d at 670 (citation omitted). The facts are sufficient to show beyond a reasonable doubt that the Defendant knowingly confined the victim by use of a deadly weapon and that she suffered serious bodily injury as a result. Additionally, we have already determined that the Defendant's attempt argument is without merit because the proof established that the kidnapping was completed.

## B. Conspiracy Convictions

The Defendant contends that his convictions for conspiracy to commit aggravated robbery and conspiracy to commit aggravated kidnapping (Counts 1 and 2) should be dismissed because the evidence was legally insufficient to support the jury's finding of guilt. Conspiracy "is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense." Tenn. Code Ann. § 39-12-103(a).

Specifically, the Defendant submits that these conspiracy convictions are based upon the uncorroborated testimony of his accomplice, Kyle Swim. It is well-settled that in Tennessee, "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. Sherrill v. State, 321 S.W.2d 811, 814 (Tenn. 1959). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice. State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984).

Our supreme court has described what is required to establish sufficient corroboration as follows:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself,

to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

Shaw, 37 S.W.3d at 903 (quoting State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). The corroborative evidence need not be "overwhelming." Id. In fact, "[o]nly slight circumstances are required to corroborate an accomplice's testimony." State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997). However, "the corroboration must include some fact establishing the identity of the defendant as a criminal actor." State v. Boxley, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001) (citing Shaw, 37 S.W.3d at 903). Whether there is sufficient corroboration is a determination for the jury. Shaw, 37 S.W.3d at 903.

The Defendant argues that Swim's testimony "was the only piece of evidence that mentioned a sustained conspiracy or plan to rob the Golden Eagle Jewelry Store[,]" noting that the Defendant testified that they abandoned the plan to rob the jewelry store, deciding to only to rob the Gilreaths in their home. However, as previously outlined,

[t]he quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplices testimony nor is it required to extend to every portion of the accomplice's testimony. . . . To the contrary, only slight circumstances are required to corroborate an accomplice's testimony."

Griffis, 964 S.W.2d at 588-89 (citations omitted) (emphasis added).

In a light most favorable to the State, the evidence demonstrated that the Defendant and Swim decided to rob the Golden Eagle jewelry store by breaking into the Gilreaths' home, holding Mrs. Gilreath hostage, and forcing Mr. Gilreath to take them to the jewelry store to retrieve the valuables therein. To this end, the Defendant and Swim made five or six trips to Clarksville and scouted the store and the Gilreaths' home. On November 1, 2007, the Defendant entered the Gilreaths' home to execute the plan to rob the jewelry store, despite the fact that the plan later fell apart.

Swim's testimony was corroborated by a Super 8 motel receipt from one of their overnight stays in Clarksville and by text messages between the Defendant and Swim on the day in question. In one text message, the Defendant wrote, "Watch 4 pops then off 2 shop

. . . .”[7] In another message, the Defendant spoke of the need to act quickly once Mr. Gilreath returned home, not wanting to risk Mr. Gilreath “trying to you know . . . .” The Defendant wrote in another message that he planned to “snatch her ass up . . . get whts in the house . . . then wait 4” Mr. Gilreath. Based upon consideration of the proof in the record before us, we conclude that the evidence was sufficient to corroborate the testimony of the accomplice Kyle Swim.

The Defendant’s argument, citing to numerous inconsistencies in Swim’s testimony, is essentially that Swim’s testimony was unreliable; however, the jury choose to accredit this testimony, as was its prerogative. The evidence is sufficient to support the Defendant’s conspiracy convictions, and this issue is without merit.

## IV. _White_ analysis

The first time this case was before this court, the Defendant, citing to State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997), contended that his dual convictions for especially aggravated kidnapping and attempted aggravated robbery violated due process concerns because the confinement of Mrs. Gilreath was not beyond that necessary to commit the attempted aggravated robbery of the Gilreaths at their home. The Defendant extrapolated further that he did not confine Mrs. Gilreath in an attempt to prevent her from summoning for help or to lessen his risk of detection and that his confinement of her did not create a significant danger or increase her risk of harm. The State asserted that the Defendant’s argument was misplaced because the Defendant was convicted of the attempted aggravated robbery at the jewelry store, not of the Gilreaths at their home. The State also submitted that the confinement of Mrs. Gilreath was beyond that necessary to accomplish the robbery at the jewelry store, created a significant danger to Mrs. Gilreath, and was intended to secure Mr. Gilreath’s cooperation.

Applying the then applicable authority of State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and Dixon, 957 S.W.2d 532, we held that the Defendant’s dual convictions did not violate principles of double jeopardy. We reasoned as follows:

> The record reflects that the jury convicted the Defendant of attempted aggravated robbery “as charged in Count Nine.” Count Nine provides, in pertinent part, as follows:

---

[7] The Defendant in his reply brief argues that the State is asking this court “to make an unfounded assumption about a text message.” He points to his own testimony where he claimed that “‘shop’ meant the verb form of the word; that he and Swim would essentially ‘shop’ for a truck to purchase and then head out to Las Vegas.” The precise meaning of this text was a determination for the jury; they were free to disregard the Defendant’s testimony.

[The Defendant] unlawfully, feloniously and knowingly did attempt to commit the offense of Aggravated Robbery, as defined in TCA 39-13-402, of John and Elke Gilreath, d/b/a Golden Eagle Jewelry, and the Defendants' conduct did constitute a substantial step toward the commission of said Aggravated Robbery, to wit: Robert Fusco did enter the home of John and Elke Gilreath and falsely imprison Elke Gilreath and attempted to falsely imprison John Gilreath while Kyle Swim remained outside of the home and acted as a lookout, in violation of TCA 39-12-101 . . . .

In fact, the Defendant himself even acknowledges this fact in his brief. In addressing the sufficiency of the conspiracy counts, the Defendant notes that Count 1 alleges that the Defendant and Swim conspired to rob the Gilreaths "d/b/a Golden Eagle Jewelry" but alleges there was no corroborating proof supporting Swim's testimony. He later changes positions in his reply brief: "The State is asking this court to take a presumptive leap by concluding that the addition of the words 'd/b/a' necessarily means that the jury found beyond a reasonable doubt that the store itself was the only intended target." Alternatively, the Defendant submits that, even if the jury did find him guilty of the attempted robbery of the jewelry store, this necessarily includes a robbery of the Gilreaths at their home. We agree with the State that the Defendant was convicted of the attempted aggravated robbery of the jewelry store, not of the attempted aggravated robbery of the Gilreaths' home. The Defendant could possibly have been indicted for a separate count involving an attempted aggravated robbery of the Gilreaths at their home, but we doubt this was what he desired.

Thus, the Defendant's argument that the especially aggravated kidnapping of Mrs. Gilreath was not beyond that necessary to commit the attempted aggravated robbery of the Gilreaths' home is without merit. Both of the cases cited by the Defendant in support of his argument involve kidnappings that took place at the site of the robbery and, therefore, are inapplicable here. See State v. Jason Lee White, No. M2009-00941-CCA-R3-CD, 2010 WL 1930951 (Tenn. Crim. App. May 12, 2010), perm. app. granted, (Tenn. Oct. 12, 2010); State v. Raymond Griffin, No. W 2001-01332-CCA-R3-CD, 2002 WL 1482689 (Tenn. Crim. App. Mar. 15, 2002), perm. app. denied, (Tenn. July 15, 2002).

Applying the Dixon standards to the facts of this case (which, as the Defendant correctly notes, apply regardless of the target of the robbery), the record reflects that when Mrs. Gilreath approached the laundry room of her home, the Defendant immediately jumped out, brandishing a weapon and threatening to shoot. The Defendant then placed Mrs. Gilreath in a chokehold and pointed the gun at her head. After Mr. Gilreath failed to comply with the Defendant's demands, a struggle between the Defendant and Mrs. Gilreath ensued. Ultimately, the Defendant shot Mrs. Gilreath in the arm and the bullet went into her chest, before he fled. We conclude that this additional movement and confinement exceeded what was necessary to accomplish the attempted aggravated robbery of the jewelry store.

Turning to the second prong of the Dixon analysis, the evidence shows that the victim was able to summon help from her husband who had gone outside to get the mail, despite the fact that Mr. Gilreath then again left the residence to retrieve his handgun from the car. However, the evidence also shows that the Defendant intended to secure Mrs. Gilreath in an effort to secure Mr. Gilreath's cooperation and lessen the Defendant's risk of detection to outsiders. Furthermore, the confinement created significant danger to Mrs. Gilreath, who suffered life-threatening injuries, which resulted in permanent impairment to her hand. Therefore, we conclude that the additional movement and confinement both "lessened the [D]efendant's risk of detection" and "increased the victim's risk of harm." Accordingly, dual convictions for especially aggravated kidnapping and attempted aggravated robbery do not violate due process under these facts and circumstances of this case. The Defendant is not entitled to relief on this issue.

Fusco, 2012 WL 368224, at *16-17.

On March 9, 2012, the Tennessee Supreme Court issued an opinion, State v. White, 362 S.W.3d 559 (Tenn. 2012), expressly overruling Anthony and Dixon. After undertaking a comprehensive review of Tennessee's kidnapping statutes, our supreme court concluded that our current kidnapping offenses "evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." Id. at 577. Significantly, the court also determined that the due process concerns earlier expressed in Anthony more properly were addressed in the first instance to the jury rather than to an appellate court:

[W]e have concluded that whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law. The jury, whose primary obligation is to ensure that a criminal defendant has been afforded due process, must evaluate the proof offered at trial and determine whether the State has met its burden. Our task, therefore, of assessing the sufficiency of the convicting evidence qualifies as the ultimate component of this constitutional safeguard. The separate due process test articulated first in Anthony, and subsequently refined in Dixon and its progeny, is, therefore, no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony.

Id. at 577-78 (citations omitted).

Thus, "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." Id. at 578. In order to protect the due process rights of those on trial for kidnapping and an accompanying felony, our supreme court said that "trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." Id. The supreme court then set forth the following instruction to be provided to juries on the "substantial interference" element of a kidnapping offense:

To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

• the nature and duration of the victim's removal or confinement by the defendant;
• whether the removal or confinement occurred during the commission of the separate offense;
• whether the interference with the victim's liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

The White court emphasized that it was not articulating a new rule of constitutional law and that its decision does not require retroactive application. Id. at 578. However, on the facts of the case before it, the court concluded that the "proof could be interpreted in different ways and, therefore, the determination of whether the removal or confinement of [the victim] constituted a substantial interference with her liberty was a question of fact for the jury to resolve." Id. at 579. The court then reviewed the jury charge provided and recognized that, while the instructions tracked the statutory language, "they did not define the key element—the substantial interference with the victim's liberty—as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." Id. at 580. Accordingly, the court held, "[b]ecause the jury was not properly instructed on the question of whether the victim's removal or confinement was essentially incidental to an accompanying felony, the Defendant is entitled to a new trial on the especially aggravated kidnapping charge." Id. Thereafter, because this case was in the "appellate pipeline," our supreme court remanded the Defendant's Rule 11 application to this court for reconsideration in light of White.

The trial court in this case did not give the instruction outlined in White. However, after reconsidering the facts and circumstances of this case in light of White, we again affirm the Defendant's dual convictions for especially aggravated kidnapping and attempted aggravated robbery, concluding that any error in failing to give the instruction was harmless beyond a reasonable doubt. As we noted in our prior opinion, the Defendant was convicted of the attempted aggravated robbery at the jewelry store, not of the attempted aggravated robbery at the Gilreaths' home. Furthermore, the State correctly notes that, in our original opinion, we noted the factual dissimilarity between this case and White, stating therein that the kidnapping in White took place at the site of robbery, which is not the case here. See Fusco, 2012 WL 368224, at *17.

Here, the removal or confinement of Mrs. Gilreath had "criminal significance above and beyond that necessary to consummate" the attempted aggravated robbery at the jewelry

-23-

store. Mrs. Gilreath was held at gunpoint inside her home in an effort to coerce her husband into taking the Defendant and Swim to the jewelry store. The kidnapping of Mrs. Gilreath at her home was unnecessary for robbery at the jewelry store. The proof is overwhelming that these are two separate and distinct offenses. We can conclude beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error. See White, 362 S.W.3d at 580 n.2 (citing State v. Howard, 30 S.W.3d 271, 277 (Tenn. 2000)); see also State v. David Earl Scott, No. E2011-00707-CCA-R3-CD, 2012 WL 5503951, at *13-14 (Tenn. Crim. App. Nov. 14, 2012) (also applying a harmless error analysis).

## V. Merger of Conspiracy Convictions

Next, the Defendant argues that the trial court erred when it failed to merge the conspiracy convictions under Counts 1 (to commit aggravated robbery) and 2 (to commit aggravated kidnapping) and sentenced him separately under each count. Specifically, he asserts that his two conspiracy convictions should have merged because the facts sustaining both convictions arose out of the same plan devised by he and Swim. The State concedes error on this issue.

The Defendant raised the issue at sentencing. In ruling on whether the Defendant could be sentenced separately for both convictions, the trial court determined as follows:

> I do believe those are separate offenses, based on the peculiar facts of this particular case in that there is actually -- could well have been two different locations for robbery. Conspiracy to commit aggravated kidnapping would not have necessarily have been necessary in the conspiracy to commit the aggravated robbery at home, so I am go to -- I believe they are separate.

Contrary to the ruling of the trial court, the issue under Tennessee Code Annotated section 39-12-103(c) is whether the multiple offenses were part of the same agreement, not whether the offenses occurred, or could have occurred, at different locations. Tennessee Code Annotated section 39-12-103 (c) provides as follows: "If a person conspires to commit a number of offenses, the person is guilty of only one (1) conspiracy, so long as the multiple offenses are the object of the same agreement or continuous conspiratorial relationship." Moreover, in addition to the statutory error, the Defendant has inferred a violation of his constitutional rights to due process and to be free from double jeopardy in prosecution. See State v. Ronallen Hardy, No. M2008-00381-CCA-R3-CD, 2009 WL 2733821, at *10 (Tenn. Crim. App. Aug. 31, 2009).

In his testimony establishing the conspiracy, Swim discussed a single plan, and although the plan involved multiple criminal acts at two locations, it was nonetheless part of a single agreement between the two men. We conclude that the trial court erred when it

-24-

refused to merge the conspiracy convictions. See id. The case is remanded to the trial court with instructions for the judgments to reflect merger of the Defendant's conspiracy convictions.

## VI. Use of Out-of-State Convictions in Range-Determination

The Defendant contends that the trial court erred in considering his out-of-state convictions for purposes of determining his status as a Range II, multiple offender. First, he argues that the Florida convictions do not affirmatively show that he was represented by counsel. Next, he submits that he was not transferred in Florida from juvenile to adult court under a transfer statute that was similar to Tennessee's transfer statute as required by Tennessee Code Annotated section 40-35-106(b)(3)(A). He requests that we reduce his sentence "to an appropriate length as a Range-I offender[.]"

The trial court may sentence a defendant as a Range II, multiple offender when it finds that the defendant has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes"; or alternatively, "[o]ne (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony." Tenn. Code Ann. § 40-35-106(a)(1) & (2). For Range II purposes, a prior conviction includes

> convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

Tenn. Code Ann. § 40-35-106(b)(5). In order to label a defendant as a multiple offender, the trial court has to determine beyond a reasonable doubt that the defendant has the requisite prior felonies. Tenn. Code Ann. § 40-35-106(c).

Following his jury trial, the Defendant was convicted of especially aggravated kidnapping, a Class A felony, and multiple Class C felonies—conspiracy to commit aggravated robbery, conspiracy to commit aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. The trial court utilized the following Florida convictions in its range-determination analysis: two "Burglary of a Dwelling" convictions (Case Numbers 98-0619 and 98-0704), determined to be akin to aggravated burglary, a Class C felony, in Tennessee; and one conviction for "Burglary of a Conveyance" (Case Number 98-

0621) considered analogous to burglary of a motor vehicle in Tennessee, a Class E felony.[8] Due to the Class E felony denomination of burglary of a motor vehicle, only the two aforementioned convictions for burglary of a dwelling formed the basis to enhance the Defendant's range on the Class A felony sentence. Moreover, absent the two burglary of a dwelling convictions, the Defendant would be a Range I, standard offender for all of his convicted offenses, including the Class C felonies—because otherwise there would only be one Class E felony applicable for range purposes. We also note that the Defendant was a juvenile at the time he committed the burglary of a dwelling offenses in Florida, but his convictions followed his transfer to adult criminal court; he was an adult at the time of the offense date in the burglary of a conveyance conviction.

## A. Representation of Counsel

Citing to Burgett v. Texas, 389 U.S. 109 (1967), and State v. Tansil, 72 S.W.3d 665 (Tenn. Crim. App. 2001), the Defendant argues that the trial court erred by using his prior Florida convictions to enhance his range without an affirmative showing that the Defendant was represented by counsel at the time of these convictions. Initially, the State responds that the Defendant has waived review of this issue by failing to raise the issue at the sentencing hearing.[9] Turning to the merits of the issue, the State contends that the Defendant's argument is misplaced because the line of cases he relies upon, namely State v. O'Brien, 666 S.W.2d 484 (Tenn. Crim. App. 1984), and its progeny, concern the improper use of uncounseled misdemeanor driving under the influence (DUI) convictions to convert a misdemeanor DUI to a felony, i.e, the enhancement of a sentence of the predicate offense because of the existence of prior convictions for the same offense. Thus, according to the State, O'Brien is inapplicable in range-determination and should be limited to its facts.

Replying to the State's retort, the Defendant concedes that he did not raise this issue at the trial court level, but he argues that "the implications of this error are substantial, and accordingly, . . . asks this [c]ourt nonetheless conduct an appropriate review of this issue." Moreover, the Defendant asserts that regardless of the fact that the cases to which he cites deal with DUI convictions, the principle should be applicable to sentencing, specifically within the context of range-determination.

---

[8] The Defendant does not take issue with the finding that these Florida convictions would likewise be felony convictions in Tennessee.

[9] Originally, the Defendant also argued that these convictions could not be used for enhancement purposes. In his reply brief, he concedes that this argument was in error. See State v. Massey, 757 S.W.2d 350, 352 (Tenn. Crim. App. 1988).

-26-

The question posed by the Defendant is controlled by <u>Baldasar v. Illinois</u>, 446 U.S. 222 (1980), and <u>Burgett</u>, 389 U.S. 109, which hold that prior convictions may not be used to enhance punishment upon a subsequent conviction unless the prosecution affirmatively established that the defendant was represented by counsel or waived his right to counsel at the time of the prior convictions. In <u>Baldasar</u>, the United States Supreme Court opined that an uncounseled misdemeanor conviction could not be used to enhance a subsequent misdemeanor conviction by converting the subsequent conviction into a felony. In that case, the record affirmatively showed that the defendant was not represented by counsel and did not waive counsel at the time of the prior misdemeanor conviction. However, in <u>Burgett</u>, the Court stated that a judgment which does not show on its face that the defendant was represented by counsel or waived his right to counsel is presumptively void for purposes of the enhancement of punishment upon a subsequent conviction. <u>See also</u> <u>Tansil</u>, 72 S.W.3d at 667 (citing <u>Burgett</u>, 389 U.S. at 114-15, and holding that "written waiver of the right to counsel is necessary for the facial validity of the judgment because the United States Supreme Court has held that in the context of using a prior conviction against a defendant to support guilt or enhanced punishment for another offense, a record of a conviction that does not show either the existence of counsel or the waiver of counsel is presumptively void"). It follows that where the record is silent as to whether the defendant was represented by counsel or waived his right to counsel at the time of the prior convictions, the prosecution must affirmatively establish that the defendant's prior convictions were counseled or not counseled by virtue of waiver in order to rely upon the prior convictions to enhance punishment for a second or subsequent offense. Tenn. Op. Att'y Gen. No. 84-161, 1984 WL 186253, at *2 (May 10, 1984).

This reasoning was adopted by this court in <u>State v. O'Brien</u>, which involved proof of prior DUI convictions to support a conviction for fourth offense DUI. Although stipulating that he had three prior DUI convictions, O'Brien challenged their use to enhance his punishment because the State did not prove that he was represented by counsel or waived the right to counsel in those prior cases. <u>O'Brien</u>, 666 S.W.2d at 485. This court agreed and reversed the defendant's conviction, relying upon <u>Baldasar</u> and <u>Burgett</u>, in determining that the prosecution had the affirmative burden of establishing the validity of the prior convictions in order to rely upon the prior convictions to enhance punishment in a subsequent prosecution. The court held that under <u>Baldasar</u>, "an uncounselled misdemeanor conviction could not be used to enhance a subsequent misdemeanor conviction by converting the subsequent offense into a felony" or by otherwise enhancing the sentence of the predicate offense because of the existence of prior convictions for the same offense. <u>O'Brien</u>, 666 S.W.2d at 485.

In <u>State v. Massey</u>, this court cautioned "that the principle recognized and applied in <u>O'Brien</u> should not be applied wholesale to the sentencing situation." 757 S.W.2d 350, 352

(Tenn. Crim. App. 1988). The Massey Court held that for purposes of determining the appropriate length of the sentence, the trial court was not limited to consideration of prior convictions in cases in which it affirmatively appeared that the defendant was represented by counsel, but could also consider prior incidents of "criminal behavior" that bore upon the sentencing determination. Id. Under the issue as presented by the Defendant, this appears to be a case of first impression in Tennessee—whether the rationale of Baldasar, Burgett, and O'Brien are applicable to convictions used for range-determination purposes which are silent on the issue of whether the Defendant was represented by counsel.

Initially, we agree with the State that the Defendant has waived consideration of the issue by failing to contemporaneously object to these convictions on this basis at the sentencing hearing. See State v. Pierre Jackson, No. W2006-02127-CCA-R3-CD, 2008 WL 2053652, at *5 (Tenn. Crim. App. May 12, 2008), perm. app. denied, (Tenn. Dec. 8, 2008). For the first time on appeal, the Defendant argues that his prior convictions should not have been used to determine his range because the State did not affirmatively show that he was represented by counsel or waived his right to counsel in his Florida convictions. In reaching its conclusion of waiver, the Jackson Court relied on the holding in State v. Albert Evans, No. W2005-00161-CCA-R3-CD, 2006 WL 1381585 (Tenn. Crim. App. May 17, 2006), perm. app. denied, (Tenn. Oct. 16, 2006):

> wherein the defendant was convicted of first degree premeditated murder and sentenced to life in prison without parole on the basis of the jury's finding of three aggravating circumstances, including that the defendant was previously convicted of a felony whose statutory elements involved the use of violence to the person. 2006 WL 1381585, at *14. He argued on appeal that no competent evidence supported the application of the violent felony aggravator because the State erroneously introduced a negotiated plea agreement form, rather than a copy of the judgment, to prove the prior conviction. This court held that the defendant waived the issue for appellate review by failing to contemporaneously object to the introduction of the document or deny the existence of the prior conviction. Id. at *15.

Jackson, 2008 WL 2053652, at *5. Similarly, we conclude that the Defendant in this case waived plenary review of this assignment of error by not objecting contemporaneously to the introduction of these convictions at the sentencing hearing and by not denying the existence of these prior convictions. Id.

We feel further constrained to note that the Defendant received the State's notice to seek enhanced punishment and did not raise any objection to any of the convictions listed

therein. Tennessee Code Annotated section 40-35-202(a) provides guidance for the State in preparing a notice to seek enhanced punishment:

> If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that the notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. The statement . . . must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein.

In other words, the statute requires at a minimum that the State file "(1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions." State v. Livingston, 197 S.W.3d 710, 713-14 (Tenn. 2006). The purpose of the statutory notice requirement is to provide a defendant with fair notice that he or she is subject to greater than the standard sentencing range, to facilitate plea agreements, to enable the defendant to make an informed plea, and to aid trial strategy. State v. Adams, 788 S.W.2d 557, 559 (Tenn. 1990); State v. Taylor, 63 S.W.3d 400, 412 (Tenn. Crim. App. 2001). Our supreme court has held that "perfect" notice is not required, but fair notice must be provided. Livingston, 197 S.W.3d at 713. This means that "when the State has substantially complied with Section 40-35-202(a), an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." Taylor, 63 S .W.3d at 412; see also State v. Cooper, 321 S.W.3d 501, 507 (Tenn. 2010); State v. Richard Douglas Lowery, No. 03C01-9604-CC-00146, 1997 WL 260070, at *5 (Tenn. Crim. App. May 19, 1997), perm. app. denied, (Tenn. Mar. 16, 1998).

In this case, the State filed a notice of intent to seek enhanced punishment pursuant to section 40-35-202 on September 16, 2009, five days before the Defendant's trial began on September 21, 2009.[10] The State listed the following convictions: 1. Grand Theft Third

---

[10] We note that, while the notice to seek enhanced punishment was untimely because it was not filed ten days prior to trial, the Defendant did not object to the untimely notice or request a continuance. Moreover, he has

(continued...)

Degree, Case Number 99-363CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 05/19/99; 2. Burglary of a Structure or Conveyance, Case Number 2004-00399CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 11/22/04; 3. Grand Theft (Motor Vehicle), Case Number 2004-00399CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 11/22/04; 4. Burglary of a Dwelling, Case Number 98-0619CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 03/17/99; 5. Burglary of a Conveyance, Case Number 98-0621CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 03/17/99; 6. Grand Theft of the Third Degree, Case Number 98-0623CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 03/17/99; 7. Burglary of a Dwelling, Case Number 98-0705CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 03/17/99; and 8. Grand Theft of the Third Degree, Case Number 98-0705CFAWS, Circuit Court, 7th Judicial Circuit, Volusia County, Florida, Conviction Date 03/17/99.

As previously noted, the trial court used only the burglary of a dwelling and burglary of a conveyance convictions to enhance the Defendant's range, and we will limit our analysis to those prior convictions. At the sentencing hearing, the State introduced the respective informations charging burglary of a dwelling and burglary of conveyance. The Defendant does not challenge the burglary of a conveyance conviction, admitting that the judgment clearly reflects that he was represented by counsel. The State attached to the informations charging the burglary of a dwelling offenses the respective orders of probation; none of the documentation regarding these two convictions reflects whether the Defendant was represented by counsel or waived his right to counsel. No additional proof was offered at the sentencing hearing on the subject, and the presentence report is silent on the matter.

For range enhancement purposes, a "certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein." Tenn.

---

[10](...continued)
made no attempt to raise this issue on appeal, and we cannot conclude that any prejudice resulted from the untimely filing. See State v. Christopher Lamont Kelso, No. E2000-01602-CCA-R3-CD, 2001 WL 681313, at *5 (Tenn. Crim. App. June 18, 2001) (citing State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988) (wherein our supreme court held that the State's failure to file a timely notice of intent to seek enhanced range sentencing did not prevent the trial court from imposing sentence in an enhanced range, absent a demonstration of prejudice to the defendant from the untimely notice; furthermore, in the absence of a defense motion for continuance, any objection to the late-filed notice is waived)); see also State v. Gilmore, 823 S.W.2d 566, 571 (Tenn. Crim. App. 1991) (declaring that "the rule fashioned by the Supreme Court in Stephenson is equally applicable to the 1989 version of Tenn. Code Ann. § 40-35-202(a)").

Code Ann. § 40-35-202(a).  However, the use of certified copies of the judgments is not the only avenue for establishing the requisite prior convictions.  See State v. Danny Anderson, 1986 WL 9307, at *3 (Tenn. Crim. App. Aug. 27, 1986).  Our sentencing statute further provides that

> reliable hearsay including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted; provided, that this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or Tennessee."

Tenn. Code Ann. § 40-35-209(b).  This court has held that "prior convictions need not be certified when they are otherwise reliable and the defendant has been given the opportunity to rebut the evidence."  Anderson, 1986 WL 9307, at *3.  In this case, the Defendant received the State's notice to seek enhanced punishment, and he did not challenge the validity of the convictions at the sentencing hearing.

Once again, the Defendant is limited to "plain error" review pursuant to Rule 36(b) of the Tennessee Rules of Appellate Procedure.  The record is clear regarding what occurred in the trial court; the first Adkisson factor is met.  See Adkisson, 899 S.W.2d at 641-42.

Turning to the second Adkissson factor, we cannot conclude that plain error exists in this case because it is not evident that a clear and unequivocal rule of law has been breached.  See Jackson, 2008 WL 2053652, at *5.  It is clear that the State must affirmatively show representation or waiver of the right to counsel when dealing with enhancement of a sentence of the predicate offense because of the existence of prior convictions, i.e, the subsequent use of prior convictions to prove the actual elements of a criminal offense.  It is also clear that when considering enhancement factors under Tennessee Code Annotated section 40-35-114 in setting the length of a defendant's sentence, the trial court is not limited to prior convictions in which it affirmatively appeared that the defendant was represented by counsel or waived said right.  However, the precise issue presented here, whether the rationale of Baldasar, Burgett, and O'Brien are applicable to convictions used for range-determination purposes, lies somewhere in between, and no clear and unequivocal rule of law exists in this situation.

In fact, the jurisprudence on the topic is anything but clear.  First, we note that Baldasar was a fractured opinion within which the plurality opinion merely referenced the rationale "in the concurring opinions" but, in which, there were separate concurrences without wholly consistent explanations for their results.  See Baldasar, 446 U.S. at 224 (Stewart, J., concurring, joined by Brennan and Stevens, JJ.), (Marshall, J., concurring, joined

by Brennan and Stevens, JJ.), (Blackmun, J., concurring).   Additionally, Baldasar was not the last word on the matter from the United States Supreme Court.  In 1994, the United States Supreme Court held in Nichols v. United States, that an uncounseled misdemeanor conviction, not resulting in a term of incarceration, could be used for enhancement purposes, expressly overruling Baldasar.  See 511 U.S. 738, 746-49 (1994) (according criminal history points pursuant to the then-mandatory United States Sentencing Guidelines for an earlier uncounseled misdemeanor DUI conviction to determine a Guideline range for a subsequent federal drug offense, shifting the mandatory Guidelines range upward by approximately two years).  In Nichols, the Supreme Court distinguished the sentencing context from guilt determinations.  Id. at 747 ("Reliance on such a conviction is also consistent with the traditional understanding of the sentencing process, which we have often recognized as less exacting than the process of establishing guilt.").  An important rationale from Nichols, that seemingly cannot be reconciled with Burgett,[11] was that the subsequent use of the conviction for enhancement purposes did not change the penalty for the prior conviction; rather, the subsequent sentence punished only the subsequent offense.  The Court in Nichols stated as follows:

> Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction.  As pointed out in the dissenting opinion in Baldasar, '[t]his Court consistently has  sustained repeat-offender laws as penalizing only the last offense committed by the defendant.'

Id. (quoting Baldasar, 446 U.S. at 232).

The Nichols decision has come under some scrutiny.  In 2002, the United States Supreme Court in Alabama v. Shelton distinguished Nichols as a case arising in the sentencing context and held that an uncounseled conviction resulting in a suspended term of incarceration violated the Sixth Amendment.  535 U.S. 654, 665 (2002) (a direct appeal involving the imposition of the original suspended sentence).  The Court stated that the Sixth

---

[11] The Court in Burgett provided the following rationale:

> To permit a conviction obtained in violation of Gideon v. Wainwright[, 372 U.S. 335 (1963),] to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case.  Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

Burgett, 389 U.S. at 115 (internal citation omitted) (emphasis added).

Amendment applies at the time a defendant is adjudicated guilty of an offense, whether actual incarceration is imposed contemporaneously with the finding of guilt, or later following some subsequent triggering event. Id. at 663-64. The court also rejected the argument that the provision of counsel at a subsequent hearing surrounding the revocation of the suspended sentence and imposition of a term of incarceration could make up for the absence of counsel at the guilt phase. Id. at 667.

> Post-Nichols . . . it is arguable that the fact of an actual constitutional violation is, perhaps, not only an important factor for determining when a prior conviction may be used for sentence enhancement purposes, but a required or controlling factor. It also seems clear that, where the subsequent use is to prove the actual elements of a criminal offense, Nichols is of questionable applicability, given that Court's emphasis on the differences between sentencing and guilt determinations.

United States v. Cavanaugh, 643 F.3d 592, 601 (8th Cir. 2011). In this case before us, there still has not been any evidence provided that an actual Sixth Amendment violation occurred during the conviction process of these two prior burglary of a dwelling convictions.

Nichols and Shelton, however, do not necessarily answer all questions regarding permissible uses of prior convictions, id., and as we previously stated, the use of prior convictions in Tennessee for range-determination purposes, lies somewhere in between. As David Raybin has noted in the treatise Tennessee Practice: Criminal and Procedure, the Nichols decision was decided on "constitutional grounds and federal procedures" and, in a range-determination context, the "result would probably be different under Tennessee procedure." 11 David Louis Raybin, Tennessee Practice: Criminal Practice and Procedure § 32.54 (Sentencing hearing-Defendant's record), at n.9 (2010-11) (emphasis added).

Moreover, analyzing the fifth Adkisson factor, we cannot conclude that consideration of the error is necessary to do substantial justice. See Jackson, 2008 WL 2053652, at *5. While Tennessee Code Annotated section 40-35-106(c) requires the trial judge to find that a defendant is a multiple offender beyond a reasonable doubt, the section does not require the a certified copy of the judgment form be introduced to establish the validity of the prior conviction. See id. at *5 n.3. In Baldasar, Burgett, and Nichols, the Defendant objected to the use of the prior conviction for the respective stated purpose at some point in the proceedings in the court below. Here, although the documents submitted by the State to establish the two prior convictions for burglary of a dwelling did not reflect the presence of counsel or a waiver of that right, the Defendant at no time "'put the State to its burden of proof' or otherwise challenged the accuracy of the conviction information." See Lowery, 1997 WL 260070, at *5 (defendant argued that the record was "devoid of any evidence"

supporting the five prior convictions used to enhance his range; all five prior convictions were mentioned in the notice, but the extent of the proof of the five qualifying convictions was found only in the "Criminal History Report" and the transcribed comments of the trial judge made at the sentencing hearing as he read from the original court file; this court concluded that the trial court was justified in considering these convictions in support of the enhancement of the range of sentence because the defendant did not challenge the convictions in the court below). Where the Defendant did not challenge the reliability or accuracy of the convictions, "he should not be heard now to claim that these two convictions were not proven." Id.

If we were to grant the Defendant a Range I sentence in this situation, it would always be sound strategy for a defendant not to raise the issue in the trial court and wait to raise the issue on appeal. The Defendant has failed to establish that he is entitled to plain error relief. See Jackson, 2008 WL 2053652, at *5 (defendant argued that his 1980 and 1993 DUI convictions should not have been used to convict him of aggravated vehicular homicide because the State did not affirmatively show that he was represented by counsel or waived his right to counsel in those cases; although, in this type of situation, the law is clear that the State had an affirmative duty to show that defendant was counseled or waived that right in order to use the prior convictions to prove the actual elements of a criminal offense, this court held that defendant had waived the issue for failing to contemporaneously object and that plain error relief was not warranted); see also State v. Anthony Whited, No. M2010-00612-CCA-R3-CD, 2011 WL 6892352, at *10 (Tenn. Crim. App. Dec. 27, 2011) (defendant, convicted of second degree murder and sentenced to 20 years as a violent offender, contended that "the trial court erred in enhancing his sentence based in part upon prior convictions for which the State did not prove that the [d]efendant either was represented by counsel or had executed a valid waiver of counsel when he was convicted of each offense"; this court concluded that defendant waived this argument by failing to object prior to trial when the State gave notice of convictions it intended to submit for sentence enhancement or during the sentencing hearing).

*B. Juvenile Transfer*

The Defendant next contends that the procedures governing transfer from juvenile court to criminal court differ in Florida and Tennessee; therefore, the juvenile transfer statutes are not similar, as required by Tennessee Code Annotated section 40-35-106(b)(3)(A). According to the Defendant, because the statutes are not similar, his prior Florida convictions for burglary of a dwelling, procured when he was still a minor, cannot be used to enhance his range. The State responds that this issue is without merit because regardless of whether the transfer statutes are similar, the convictions were felony convictions obtained in criminal court. The State asserts that the trial court was justified in

considering these convictions after determining that they would also have been felony convictions in Tennessee.

When a defendant's prior convictions are obtained while the defendant is still under the age of majority, section 40-35-106(b)(3) applies in calculating the number of prior convictions a defendant has received for range-determination purposes:

(A) A finding or adjudication that a defendant committed an act as a juvenile that would constitute a felony if committed by an adult and that resulted in a transfer of the juvenile to criminal court pursuant to § 37-1-134, or similar statutes of other states or jurisdictions, shall not be considered as a prior conviction for the purposes of this section unless the juvenile was convicted of a felony in a criminal court[.]

(Emphasis added). In 2010, the legislature added an additional subsection to section (b)(3), which provides as follows:

(B) Notwithstanding subdivision (b)(3)(A), a finding or adjudication that a defendant committed an act as a juvenile that would constitute a Class A or Class B felony if committed by an adult shall be considered as a prior conviction for the purposes of this section, regardless of whether the juvenile was transferred to criminal court pursuant to § 37-1-134, or similar statutes of other states or jurisdictions[.]

(Emphasis added).

The offense dates for the Defendant's Florida burglary of a dwelling convictions are March 21, 1998 and April 10, 1998. The pertinent sections of our 1998 statute outlined the following procedure for transferring a juvenile defendant to criminal court:

(a) After a petition has been filed alleging delinquency based on conduct that is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction. The disposition of the child shall be as if the child were an adult if:
(1) The child was sixteen (16) years or more of age at the time of the alleged conduct, or the child was less than sixteen (16) years of age if such child was charged with the offense of first degree murder, second degree murder, rape, aggravated rape, rape of a child, aggravated rape of a child,

-35-

aggravated robbery, especially aggravated robbery, kidnapping, aggravated kidnapping or especially aggravated kidnapping or an attempt to commit any such offenses. The district attorney general may not seek, nor may any child transferred under the provisions of this section receive, a sentence of death for the offense for which the child was transferred;

(2) A hearing on whether the transfer should be made is held in conformity with §§ 37-1-124, 37-1-126 and 37-1-127;

(3) Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and the child's parents, guardian or other custodian at least three (3) days prior to the hearing; and

(4) The court finds that there are reasonable grounds to believe that:

(A) The child committed the delinquent act as alleged;

(B) The child is not committable to an institution for the developmentally disabled or mentally ill; and

(C) The interests of the community require that the child

be put under legal restraint or discipline.

(b) In making the determination required by subsection (a), the court shall consider, among other matters:

(1) The extent and nature of the child's prior delinquency records;

(2) The nature of past treatment efforts and the nature of the child's response thereto;

(3) Whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(4) Whether the offense was committed in an aggressive and premeditated manner;

(5) The possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state; and

(6) Whether the child's conduct would be a criminal gang offense, as defined in § 40-35-121, if committed by an adult.

(c) The transfer pursuant to subsection (a) terminates jurisdiction of the juvenile court with respect to any and all delinquent acts with which the child may then or thereafter be charged, and the child shall thereafter be dealt with as an adult as to all pending and subsequent criminal charges; provided, that if a child transferred pursuant to this section is acquitted in criminal court on the charge or charges resulting in such transfer, or if such charge or charges are dismissed in such court, this subsection (c) shall not apply and the juvenile court shall retain jurisdiction over such child. If a child is in the legal custody of the department at the time of transfer, such custody shall terminate at the transfer hearing, except that if a child is already committed to the department, the court may determine if it is in the best interest of the child to remain in the

legal custody of the department until conviction occurs. In any case, legal custody by the department shall terminate upon any conviction in adult criminal court. If there is no conviction and charges so transferred are dismissed or acquittal occurs, the presiding trial judge shall notify the transferring juvenile court judge of such dismissal or acquittal so that the juvenile court may at its discretion set a hearing to ascertain status of the child as to the department's custody.

(d) If a person eighteen (18) years of age or older is to be charged with an offense that was alleged to have been committed prior to such person's eighteenth birthday, the petition shall be brought in the juvenile court that would have had jurisdiction at the time of the offense. The juvenile court shall either adjudicate the case under its continuing jurisdiction authority under § 37-1-102(b)(4)(B) and (C) or undertake transfer proceedings consistent with this section.

Tenn. Code Ann. § 37-1-134 (1998). The 1998 Florida law imposed the following the guidelines when transferring a juvenile defendant to adult court:

985.226 Criteria for waiver of juvenile court jurisdiction; hearing on motion to transfer for prosecution as an adult.--

(1) VOLUNTARY WAIVER.--The court shall transfer and certify a child's criminal case for trial as an adult if the child is alleged to have committed a violation of law and, prior to the commencement of an adjudicatory hearing, the child, joined by a parent or, in the absence of a parent, by the guardian or guardian ad litem, demands in writing to be tried as an adult. Once a child has been transferred for criminal prosecution pursuant to a voluntary waiver hearing and has been found to have committed the presenting offense or a lesser included offense, the child shall be handled thereafter in every respect as an adult for any subsequent violation of state law, unless the court imposes juvenile sanctions under s. 985.233(4)(b).

(2) INVOLUNTARY WAIVER.--
    (a) Discretionary involuntary waiver.--The state attorney may file a motion requesting the court to transfer the child for criminal prosecution if the child was 14 years of age or older at the time the alleged delinquent act or violation of law was committed. If the child has been previously adjudicated delinquent for murder, sexual battery, armed or strong-armed robbery, carjacking, home-invasion robbery, aggravated battery, or aggravated assault, and is currently charged with a second or subsequent violent crime against a

person, the state attorney shall file a motion requesting the court to transfer and certify the juvenile for prosecution as an adult, or proceed pursuant to s. 985.227(1).

(b) Mandatory involuntary waiver.--If the child was 14 years of age or older at the time of commission of a fourth or subsequent alleged felony offense and the child was previously adjudicated delinquent or had adjudication withheld for or was found to have committed, or to have attempted or conspired to commit, three offenses that are felony offenses if committed by an adult, and one or more of such felony offenses involved the use or possession of a firearm or violence against a person, the state attorney shall request the court to transfer and certify the child for prosecution as an adult or shall provide written reasons to the court for not making such request, or proceed pursuant to s. 985.227(1). Upon the state attorney's request, the court shall either enter an order transferring the case and certifying the case for trial as if the child were an adult or provide written reasons for not issuing such an order.

(3) WAIVER HEARING.--

(a) Within 7 days, excluding Saturdays, Sundays, and legal holidays, after the date a petition alleging that a child has committed a delinquent act or violation of law has been filed, or later with the approval of the court, but before an adjudicatory hearing and after considering the recommendation of the juvenile probation officer, the state attorney may file a motion requesting the court to transfer the child for criminal prosecution.

(b) After the filing of the motion of the state attorney, summonses must be issued and served in conformity with s. 985.219. A copy of the motion and a copy of the delinquency petition, if not already served, must be attached to each summons.

(c) The court shall conduct a hearing on all transfer request motions for the purpose of determining whether a child should be transferred. In making its determination, the court shall consider:

1. The seriousness of the alleged offense to the community and whether the protection of the community is best served by transferring the child for adult sanctions.

2. Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted.

4. The probable cause as found in the report, affidavit, or complaint.

5. The desirability of trial and disposition of the entire offense in one court when the child's associates in the alleged crime are adults or children who are to be tried as adults.

6. The sophistication and maturity of the child.

7. The record and previous history of the child, including:

a. Previous contacts with the department, the Department of Corrections, the former Department of Health and Rehabilitative Services, the Department of Children and Family Services, other law enforcement agencies, and courts;

b. Prior periods of probation or community control;

c. Prior adjudications that the child committed a delinquent act or violation of law, greater weight being given if the child has previously been found by a court to have committed a delinquent act or violation of law involving an offense classified as a felony or has twice previously been found to have committed a delinquent act or violation of law involving an offense classified as a misdemeanor; and

d. Prior commitments to institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child, if the child is found to have committed the alleged offense, by the use of procedures, services, and facilities currently available to the court.

(d) Prior to a hearing on the transfer request motion by the state attorney, a study and report to the court relevant to the factors in paragraph (c) must be made in writing by an authorized agent of the department. The child and the child's parents or legal guardians and counsel and the state attorney shall have the right to examine these reports and to question the parties responsible for them at the hearing.

(e) Any decision to transfer a child for criminal prosecution must be in writing and include consideration of, and findings of fact with respect to, all criteria in paragraph (c). The court shall render an order including a specific finding of fact and the reasons for a decision to impose adult sanctions. The order shall be reviewable on appeal under s. 985.234 and the Florida Rules of Appellate Procedure.

(4) EFFECT OF ORDER WAIVING JURISDICTION.--If the court finds, after a waiver hearing under subsection (3), that a juvenile who was 14 years of age or older at the time the alleged violation of state law was committed should be charged and tried as an adult, the court shall enter an order

transferring the case and certifying the case for trial as if the child were an adult. The child shall thereafter be subject to prosecution, trial, and sentencing as if the child were an adult but subject to the provisions of s. 985.233. Once a child has been transferred for criminal prosecution pursuant to an involuntary waiver hearing and has been found to have committed the presenting offense or a lesser included offense, the child shall thereafter be handled in every respect as an adult for any subsequent violation of state law, unless the court imposes juvenile sanctions under s. 985.233.

985.227 Prosecution of juveniles as adults by the direct filing of an information in the criminal division of the circuit court; discretionary criteria; mandatory criteria.--

(1) DISCRETIONARY DIRECT FILE; CRITERIA.--

(a) With respect to any child who was 14 or 15 years of age at the time the alleged offense was committed, the state attorney may file an information when in the state attorney's judgment and discretion the public interest requires that adult sanctions be considered or imposed and when the offense charged is:

1. Arson;
2. Sexual battery;
3. Robbery;
4. Kidnapping;
5. Aggravated child abuse;
6. Aggravated assault;
7. Aggravated stalking;
8. Murder;
9. Manslaughter;
10. Unlawful throwing, placing, or discharging of a destructive device or bomb;
11. Armed burglary in violation of s. 810.02(2)(b) or specified burglary of a dwelling or structure in violation of s. 810.02(2)(c);
12. Aggravated battery;
13. Lewd or lascivious assault or act in the presence of a child;
14. Carrying, displaying, using, threatening, or attempting to use a weapon or firearm during the commission of a felony; or
15. Grand theft in violation of s. 812.014(2)(a).

(b) With respect to any child who was 16 or 17 years of age at the time the alleged offense was committed, the state attorney may file an information when in the state attorney's judgment and discretion the public interest

requires that adult sanctions be considered or imposed. However, the state attorney may not file an information on a child charged with a misdemeanor, unless the child has had at least two previous adjudications or adjudications withheld for delinquent acts, one of which involved an offense classified as a felony under state law.

(2) MANDATORY DIRECT FILE.--

(a) With respect to any child who was 16 or 17 years of age at the time the alleged offense was committed, the state attorney shall file an information if the child has been previously adjudicated delinquent for murder, sexual battery, armed or strong-armed robbery, carjacking, home-invasion robbery, aggravated battery, or aggravated assault, and is currently charged with a second or subsequent violent crime against a person.

(b) Notwithstanding subsection (1), regardless of the child's age at the time the alleged offense was committed, the state attorney must file an information with respect to any child who previously has been adjudicated for offenses which, if committed by an adult, would be felonies and such adjudications occurred at three or more separate delinquency adjudicatory hearings, and three of which resulted in residential commitments as defined in s. 985.03(45).

(c) The state attorney must file an information if a child, regardless of the child's age at the time the alleged offense was committed, is alleged to have committed an act that would be a violation of law if the child were an adult, that involves stealing a motor vehicle, including, but not limited to, a violation of s. 812.133, relating to carjacking, or s. 812.014(2)(c)6., relating to grand theft of a motor vehicle, and while the child was in possession of the stolen motor vehicle the child caused serious bodily injury to or the death of a person who was not involved in the underlying offense. For purposes of this section, the driver and all willing passengers in the stolen motor vehicle at the time such serious bodily injury or death is inflicted shall also be subject to mandatory transfer to adult court. "Stolen motor vehicle," for the purposes of this section, means a motor vehicle that has been the subject of any criminal wrongful taking. For purposes of this section, "willing passengers" means all willing passengers who have participated in the underlying offense.

(3) EFFECT OF DIRECT FILE.--

(a) Once a child has been transferred for criminal prosecution pursuant to information and has been found to have committed the presenting offense or a lesser included offense, the child shall be handled thereafter in every

respect as if an adult for any subsequent violation of state law, unless the court imposes juvenile sanctions under s. 985.233.

      (b) When a child is transferred for criminal prosecution as an adult, the court shall immediately transfer and certify to the appropriate court all preadjudicatory cases that pertain to that child which are pending in juvenile court, including, but not limited to, all cases involving offenses that occur or are referred between the date of transfer and sentencing in adult court and all outstanding juvenile disposition orders. The juvenile court shall make every effort to dispose of all predispositional cases and transfer those cases to the adult court prior to adult sentencing. It is the intent of the Legislature to require all cases occurring prior to the sentencing hearing in adult court to be handled by the adult court for final resolution with the original transfer case.

      (c) When a child has been transferred for criminal prosecution as an adult and has been found to have committed a violation of state law, the disposition of the case may be made under s. 985.233 and may include the enforcement of any restitution ordered in any juvenile proceeding.

(4) DIRECT-FILE POLICIES AND GUIDELINES.--Each state attorney shall develop and annually update written policies and guidelines to govern determinations for filing an information on a juvenile, to be submitted to the Executive Office of the Governor, the President of the Senate, the Speaker of the House of Representatives, and the Juvenile Justice Advisory Board not later than January 1 of each year.

Fla. Stat. §§ 985.226 & .227 (1998).

The Defendant argues that these two juvenile transfer statutes are not similar, noting that unlike the transfer statute in Tennessee, Florida law mandates that particular offenses be automatically transferred to adult court without a hearing. According to the Defendant, in Florida, the prosecutor is vested with the exclusive discretion in certain cases to prosecute a child in adult court; stated another way, the Florida statute gives prosecutors "discretion to direct-file 16 and 17 year old offenders into adult court." The Defendant does not say, and the record does not reflect, whether the Defendant's burglary of a dwelling convictions were "direct-filed" into Florida adult court.

The Defendant asserts that "Tennessee has long recognized the great significance created by transfer hearings, and noted the attendant constitutional implications." Moreover, the Defendant submits that the legislative changes in 2010 bolster his argument that for lower level offenses, the "similar transfer statute requirement . . . must be strictly construed." Therefore, the Defendant contends that because these burglary of a dwelling convictions

should not have been considered due to the dissimilarities between the two transfer statutes, he should have been sentenced as a Range I, standard offender. At the sentencing hearing, the trial court found the Defendant's argument to be meritless, reasoning as follows: "He was, in fact, under the information that you have provided me, tried as an adult, based on the transfer statute, whether we call it transfer statute or not that existed in Florida at the time."

This court's primary duty in construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); see also State v. Davis, 940 S.W.2d 558, 561 (Tenn. 1997). Legislative intent should be gleaned from the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997). Furthermore, this court should construe a statute so that its component parts are consistent and reasonable, and inconsistent parts should be harmonized, where possible. State v. Odom, 928 S.W.2d 18, 30 (Tenn. 1996).

We conclude that the relevant comparison is not between the transfer statutes of the two states but between the nature of juvenile and adult proceedings. As exemplified by the lengthy transfer statutes outlined above, we do not believe that the legislature intended to require sentencing judges to determine the nuances of the transfer statutes of the various states in its range-determination. This holding does not run afoul the policy that juvenile adjudications are not to be used in collateral matters. See State v. Butler, 626 S.W.2d 6, 10 (Tenn. 1981). "On those occasions when a juvenile is transferred to criminal court to be tried as an adult, he or she is afforded the full panoply of constitutional rights accorded to criminal defendants, including jury trials." State v. Burns, 205 S.W.3d 412, 417 (Tenn. 2006). For purposes of the range-determination statute, we conclude that the transfer proceeding in Tennessee is similar to the transfer proceeding held in Florida in that both proceedings result in a similar outcome—a determination of a juvenile's legal status and tentative transfer to adult criminal court. We think this to be a more sensible interpretation of section 40-35-106(b)(3)(A) ("that resulted in a transfer of the juvenile to criminal court pursuant to § 37-1-134, or similar statues of other states or jurisdictions . . . .") than that proposed by the Defendant.

Additionally, the 2010 change to section 40-35-106(b)(3) contradicts, rather than bolsters, the Defendant's argument that the "similar transfer statute requirement . . . must be strictly construed." The legislature has now seen fit to give juvenile adjudications even less protection, by allowing the sentencing judge to consider acts that would constitute a Class A or Class B felony regardless of whether the Defendant was transferred to criminal court under our transfer statute or any other. During the discussion on the Senate floor of this 2010 amendment to the statue, Senator Doug Jackson noted that juvenile adjudications do not

involve the same constitutional guarantees afforded an accused in adult criminal court but commented that the amended provision permits the use of those juvenile adjudications to enhance a Defendant's range. See Tenn. Senate Session, Debate on Senate Bill 3314, April 15, 2010. The Senate was not dissuaded by Senator Jackson's comments and passed the amendment into law.

Thus, even assuming arguendo, that the Defendant has raised a distinction between Tennessee and Florida law pertaining to juvenile transfers, it is not a difference which is relevant to the issue before this court. We agree with the State that, upon determining that these Florida convictions would likewise be felony convictions in Tennessee, the trial court properly considered them in establishing the Defendant's range.

*VII. Imposition of Sentence*

The Defendant challenges the length of his various sentences and their consecutive nature. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Susan Renee Bise, -- S.W.3d --, No. E2011-00005-SC-R11-CD, 2012 WL 4380564, at *20 n.41 (Tenn. Sept 26, 2012).

*A. Length*

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Bise, 2012 WL 4380564, at *18. Currently, upon a challenge to the length of the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at *17. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254

S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Our amended Sentencing Act no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. Tennessee Code Annotated section 40-35-210 was amended to provide as follows:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, *the court shall consider, but is not bound by, the following advisory sentencing guidelines*:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.
>
> (d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).

The 2005 amendments rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement and mitigating factors when adjusting the length of a sentence. Bise, 2012 WL 4380564, at *17. In accordance with the broad discretion now afforded a trial court's sentencing decision,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

Following his jury trial, the Defendant was convicted of especially aggravated kidnapping, a Class A felony, and multiple Class C felonies—conspiracy to commit aggravated robbery, conspiracy to commit aggravated kidnapping, attempted aggravated robbery, and aggravated burglary. See Tenn. Code Ann. §§ 39-12-101, -12-103, -13-202, -13-304, -13-305, -13-402, -13-403, & -14-403. As a Range II, multiple offender, the Defendant faced a potential sentence of 25 to 40 years for his Class A felony conviction and 6 to 10 years for his Class C felony convictions. See Tenn. Code Ann. § 40-35-112(b). The trial court imposed an enhanced sentence of 35 years for the Class A felony and enhanced sentences of 10 years for each of the Class C felony convictions.

In setting the length of the Defendant's sentences, the trial court found two enhancement factors[12] to be applicable to all of the Defendant's convictions: the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; and the Defendant was a leader in the commission of the offense, citing to the Defendant and Swim's testimony, the text messages between the two men, and the fact that the Defendant chose the location. See Tenn. Code Ann. § 40-35-114(1) & (2). The trial court found that two mitigating factors applied to the Defendant's various convictions: the Defendant assisted the authorities in locating and recovering any property or person involved in the crime, noting the Defendant assisted the authorities in locating the weapon he discarded as he was fleeing the Gilreaths' home; and the "catch-all" mitigating factor, noting that the Defendant gave a statement to the authorities. See Tenn. Code Ann. § 40-35-113(10) & (13). The trial court declined to apply as a mitigating factor to the especially aggravated kidnapping conviction that the Defendant voluntarily released the victim. See Tenn. Code Ann. § 39-13-305(b)(2). In weighing the various factors, the trial court stated that it assessed these two mitigating factors "some" value.

The Defendant argues that the trial court erred in several ways. First, he submits that the especially aggravated kidnapping sentence was not proportionate to the offense he committed when his conviction "was based on facts that pale in comparison to other kidnapping cases." Second, he argues that the trial court gave the two enhancement factors "undue weight." Third, the Defendant further contends that the trial court erred by giving

---

[12] It was later clarified in the sentencing ruling that the trial court was also applying enhancement factor (9)—the Defendant possessed or employed a firearm during the commission of the offense—to the Defendant's conviction for aggravated burglary. See Tenn. Code Ann. §40-35-114(9). This additional factor was not necessary to support the sentences as imposed, but we note that the record does support its application.

"little weight" to the fact that he assisted the authorities by helping them find the weapon and by disregarding the fact that he voluntarily released the victim alive. The State argues that the Defendant's argument that the court gave "undue weight" to certain enhancement factors is misplaced because the 2005 amendments to the Sentencing Act preclude appellate review of the weight assigned to these factors. Because the trial court considered the relevant advisory factors and imposed a sentence consistent with the purposes and principles of the Sentencing Act, the State asks us to affirm the sentence. Finally, the State asserts that the record supports the trial court's application and rejection of the proposed enhancement and mitigating factors.

In our previous opinion, we affirmed the length of the Defendant's sentence, reasoning as follows:

> The Defendant makes no real argument that enhancement factor (1) did not apply, only that the trial court gave it "undue weight" as "each of his prior cases was a non-violent property crime" and six of them occurred while he was juvenile. We conclude that this factor was properly applied given that the Defendant had numerous previous convictions. As previously noted in footnote 9 of this opinion, the Defendant's argument that all of his convictions must reflect his representation by counsel or waiver of that right in order for them to be used for enhancement purposes has been found to be without merit; all of his conviction can be considered regardless of whether the convictions reflect his representation by counsel or waiver of said right. See Massey, 757 S.W.2d at 352. As delineated in the State's notice to seek enhanced punishment, it is clear that the Defendant had a plethora of prior criminal convictions or criminal behavior adjudicated in adult court, in addition to those convictions used to establish his Range II status. Moreover, based upon the evidence at trial, the record supports the trial court's determination that the Defendant was a leader in the commission of the offense. Swim testified that the Defendant came up with the idea of robbing the Gilreaths and their jewelry store. As found by the trial court, this was supported by both the Defendant and Swim's testimony at trial and by the text messages sent between the two men on the day of the home invasion.
>
> In its sentencing determination, the trial court did consider the mitigating factors espoused by the Defendant, finding two factors to be applicable, and disregarding the fact that the Defendant left the victim alive. We agree with the trial court that section 39-13-305(b)(2) should not be applied as a mitigating factor in a situation, where as here, the victim was shot and a bullet lodged in her chest, causing a life-threatening injury before the

-47-

Defendant fled from the scene; this is a correct conclusion regardless of the fact that the victim ultimately lived and the fact that the jury later acquitted the Defendant of the murder charge.

The weight to be given the various factors is within the broad discretion afforded our trial courts.

Fusco, 2012 WL 368224, at *36-37.

Most importantly, under the new directive of Bise from our supreme court, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Bise, 2012 WL 4380564, at *17. Because the application of enhancement and mitigating factors to adjust a sentence was rendered advisory by the 2005 amendments, we reiterate that the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the principles and purposes of the Act, regardless of the presence or absence of mitigating and enhancement factors. The trial court in this case thoroughly considered the purposes and principles of the Sentencing Act in rendering its decision. We conclude that the trial court did not abuse its discretion in setting the Defendant's various sentences at 35 and 10 years.

### B. Consecutive Nature

As his last issue, the Defendant challenges the consecutive nature of his sentences. Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
(6) The defendant is sentenced for an offense committed while on probation; or
(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4).

The trial court found that factors (2) and (4) applied to the Defendant and ordered consecutive sentences. The Defendant argues that the trial court erred in giving great weight to his criminal history in determining that consecutive sentencing was warranted. The Defendant admits that he had eight prior felony convictions but asserts that most of these felony offenses should not have been considered pursuant to his previously dismissed Burgett argument. The Defendant then contends that, even if they were properly considered, the trial court gave them "undue weight," once more noting that the crimes were non-violent property crimes and that six of the convictions were committed while he was a juvenile. Additionally, the Defendant argues that the trial court erred in giving great weight to the fact that he was a dangerous offender, submitting that the evidence does not substantiate this finding when the jury acquitted him of attempted first and second degree murder.

The State replies that the trial court properly ordered the Defendant to serve four of his sentences consecutively because of the Defendant's extensive criminal record and because the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime when the risk to human life was high.

We agree with the State. The evidence at the sentencing hearing supports the conclusion that the Defendant had an extensive criminal record, the presentence report and sentencing exhibits reflect numerous prior felony convictions. As found by the trial court, the Defendant's criminal record is "very, very extensive from the age of sixteen up through the present age."

Regarding the imposition of consecutive sentences because the Defendant was a dangerous offender, the trial court complied with <u>State v. Wilkerson</u>, 905 S.W.2d 933, 938 (Tenn. 1995), and determined that the terms imposed were reasonably related to the severity of the offenses committed and were necessary in order to protect the public from further criminal acts by the offender. The facts of this case support this conclusion. As noted by the trial court, the Defendant had only recently been released from the penitentiary before he formulated this detailed plan to rob the Gilreaths and their jewelry store. The trial judge found this to be "the worse case of non-homicide that [he had] seen in [his 40] years of criminal practice[.]"

The presence of a single factor is enough to justify the imposition of consecutive sentences. We affirm the trial court's imposition of consecutive sentencing.

<u>CONCLUSION</u>

For the reasons articulated above, we remand the judgments for conspiracy to commit aggravated robbery and conspiracy to commit aggravated kidnapping to reflect their merger. In all other respects, we affirm the Defendant's convictions and sentences.

_____
D. KELLY THOMAS, JR., JUDGE

-50-