# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 26, 2014

## STATE OF TENNESSEE v. JONATHAN RAY CHAPMAN

**Appeal from the Criminal Court for Carter County**
**No. 20820A      Robert E. Cupp, Judge**

_____

**No. E2013-00839-CCA-R3-CD - Filed May 5, 2014**

_____

Appellant, Jonathan Ray Chapman, was convicted of aggravated robbery, and the trial court sentenced him to ten years in confinement. On appeal, appellant argues that the trial court erred by: (1) admitting his videotaped confession into evidence and (2) failing to admit a statement made by his girlfriend into evidence. Following our review of the parties' briefs, the record, and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, joined.

Bradley L. Henry (on appeal), Knoxville, Tennessee; and H. Randolph Fallin (at trial), Mountain City, Tennessee, for the appellant, Jonathan Ray Chapman.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulaney Faughn, Assistant Attorney General; Anthony Wade Clark, District Attorney General; and Melanie Sellers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns the aggravated robbery of the victim, Michael Jason Davis, while in his mother's home on January 2, 2011. A Carter County grand jury indicted appellant for aggravated robbery, and appellant's trial began on June 14, 2012.

### I.  Facts from Trial

The proof at trial showed that prior to January 2, 2011, the victim had dated Bethany Collins "[o]n and off for a year." However, the relationship ended in November 2010, and

Ms. Collins began dating appellant. Between November 2010 and January 2011, appellant, Ms. Collins, and the victim exchanged "harsh words" due to "a little jealousy."

On January 2, 2011, appellant and Ms. Collins decided to rob the victim. They recruited Kimberly Crable, Ms. Collins's friend, and Christopher Phillips, appellant's friend, to help them perpetrate the robbery. The victim was at his mother's house doing laundry when Ms. Crable called and told him that she and Ms. Collins were "having problems." She requested to speak with the victim in person. The victim refused because he found the request "odd" since he and Ms. Crable were merely acquaintances.

Appellant, Ms. Collins, Ms. Crable, and Mr. Phillips arrived at the home of the victim's mother approximately one to two hours after the telephone call. The victim heard a knock on the door. As he approached the door, the door was "kicked in," and one of the perpetrators pointed a gun, which was later identified as a realistic-looking "air pistol," at the victim. Mr. Phillips ordered the victim to lie facedown on the floor. Appellant and Ms. Collins entered the residence and began gathering items. Mr. Phillips threatened to cut the victim's throat, and the victim felt a knife against his throat. The victim was also kicked while he was lying on the floor. The victim suffered a bruised lip and a broken tooth. Appellant, Ms. Collins, and Mr. Phillips took two television sets, a surround sound system, the victim's wallet, a backpack, and some clothing from the home.

After the victim saw Ms. Collins, Mr. Phillips, and appellant leave, he retrieved a firearm and went outside. There were two cars outside. Ms. Crable and Ms. Collins were in one car, and appellant and Mr. Phillips were in another. The victim fired two or more shots at the four individuals, striking Mr. Phillips in the head. Mr. Phillips was taken to the hospital and was released several days later.

The victim's mother, Stacy Lewis, arrived home later that evening between 6:30 and 7:00 p.m. She noticed that the victim was "very upset" and "shaking" and that he had been "roughed up."

Appellant obtained consent from Steven Posey, a friend and former co-worker, to stay at Mr. Posey's apartment on the night of January 2, 2011. Appellant informed Mr. Posey that he and three other individuals had robbed the victim and that he thought he was being followed. When Mr. Posey returned home at 12:30 a.m. on January 3, 2011, he found the two televisions, the backpack, and the "air pistol" inside the apartment. These items were later given to the police.

On January 3, 2011, appellant went to the police station, waived his *Miranda* rights, and confessed to robbing appellant. His written confession states, in part:

-2-

This in[c]ident happened because I planned it. My reason for getting this started was to get Jason Davis thinking that he needs to leave Bethany and myself alone. He called and [harassed] the both of us on numerous [occasions] . . . . I knew that Jason has had an outstanding warrant on him[] and that there was no way calling and reporting the [harassment] would help me. I felt very helpless and that I should just take matters in my own hand. So I decided that breaking into his house and robbing him would stop the issue. So I spoke to [B]ethany about the idea, and we agreed on it. So we [went] to Chris's house and talk[ed] to him about it. With him being my friend[,] he just wanted to help. Then we knew Jason wouldn't meet up with any of us three. That's when K[i]m was brought into it. She was gonna be the one to set Jason up so we could do what we done [sic]. After we got everything figured out[,] we acted on it. We got into the house, [and] Jason [was] inside the house. At this point [I've] got [sic] a plastic toy gun pointed at him telling him to get down. Then as Chris kept him down[,] we loaded up what we could. At this point[,] both of the cars had been moved into the driveway to load up. . . .

Ms. Collins was also taken into custody, and she showed officers where the knife that was used in the robbery was located. The victim was charged with two counts of aggravated assault for shooting at appellant and Mr. Phillips. The victim admitted that at the time of this incident, he had been a fugitive for two years based on a probation violation. When asked about alleged discrepancies between his statements to police and his testimony at trial, the victim provided ambiguous answers. However, the victim asserted that his later statements, which were taken after he surrendered himself for the probation violation, were the "whole truth."

A jury convicted appellant of aggravated robbery, and the trial court sentenced appellant to ten years in the Tennessee Department of Correction.

## II. Analysis

Appellant now argues that the trial court erred by admitting appellant's videotaped confession into evidence and by failing to admit a statement made by Ms. Collins into evidence. The State responds that the trial court properly determined the admissibility of the evidence.

The determination of whether evidence is admissible at trial is a matter left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996); *State v. Looper*, 118 S.W.3d 386, 422 (Tenn. Crim. App. 2003) (quoting *State v. James*, 81 S.W.3d 751, 760 (Tenn. 2002)). An

abuse of discretion occurs when "the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008) (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). Therefore, we review both of these evidentiary issues under an abuse of discretion standard.

## A. Appellant's Videotaped Confession

Prior to appellant's confession, Captain Michael Merritt had viewed a text message sent by Ms. Collins to Ms. Crable that stated, "Kk so is there neway u can cum up here n watauga so we can do dis..." During appellant's videotaped confession, Captain Merritt said to appellant, "I've got my hands on text messages from Bethany to Kim saying, 'Are you ready to do this?' or something like that. Now, it's my understanding that you all met somewhere today. Is that correct?" Appellant confirmed that he met other individuals that day. At trial, the State played this videotaped confession for the jury. Appellant objected to this evidence stating, "[Y]ou're talking about text messages we haven't seen, or have any basis for what the context is . . . ." In response to appellant's objections, the State agreed to enter three photographs of the text messages from Ms. Collins's telephone, and appellant agreed to this procedure. Appellant also objected to the investigator's interpreting or paraphrasing the messages during the interview. The trial court admitted the videotaped confession into evidence and gave a curative instruction regarding Captain Merritt's interpretations of the message. The court stated:

> Ladies -- Ladies and Gentlemen, listening to this video you're -- you're hearing Captain Merritt talking about texts received. . . . Captain Merritt is going to be saying some things about those texts and -- and what he says is -- is maybe his interpretation of them. So, what's going to happen when we get through looking at this the state's going to intro -- introduce those text messages for you so that you can look at them and see what they say. Any questions about that?

Appellant now argues that the text messages used in the videotaped confession were inadmissible hearsay, that Captain Merritt's interpretation of the text messages during the interview was an inadmissible lay opinion, and that because of the reference to text messages, the videotaped confession should have been excluded under Tennessee Rule of Evidence 403. The State responds that the text messages were not hearsay, that any error in Captain Merritt's interpretation of the text messages was cured by the introduction of the photographs of the text messages and the curative instruction, and that appellant failed to object to this evidence under Rule 403 and has, therefore, waived consideration of this issue.

## 1. Appellant's Hearsay Objection

Appellant argues that the text messages used in the videotaped confession were inadmissible hearsay because of Captain Merritt's reference to the text messages. However, even if text messages were inadmissible hearsay, appellant acquiesced to the admission of the evidence at trial by abandoning his hearsay objection after the parties agreed to the admission of the photographs of the text message; therefore, he cannot now challenge it on appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Furthermore, appellant has failed to prove that he suffered any prejudice by the trial court's admission of the text messages. Appellant's written confession was already in evidence, and the text messages did not further incriminate appellant. The evidence of appellant's guilt was overwhelming. Therefore, any error is harmless. *See* Tenn. R. App. P. 36(b).

## 2. Lay Opinion

Appellant also argues that Captain Merritt's testimony was an improper lay opinion because Captain Merritt interpreted the text messages. Tennessee Rule of Evidence 701(a) states that a lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." This court has stated, "[T]he admissibility of a lay witness' testimony rests on whether the facts in issue are within the range of knowledge or understanding of ordinary laymen. Likewise, expert testimony is only necessary when the average person would not be knowledgeable on the subject matter at issue." *State v. Boggs*, 932 S.W.2d 467, 474 (Tenn. Crim. App. 1996) (citations omitted). Therefore, "a lay witness may testify to matters that are in the common experience of most individuals." *State v. Samuel*, 243 S.W.3d 592, 603 (Tenn. Crim. App. 2007).

It appears that Captain Merritt interpreted or paraphrased the message "Kk so is there neway u can cum up here n watauga so we can do dis..." He paraphrased this message by saying, "I've got my hands on text messages from Bethany to Kim saying, 'Are you ready to do this?' or something like that. Now, it's my understanding that you all met somewhere today. Is that correct?" The text message that Captain Merritt interpreted was written with poor grammar and spelling. However, it was not encoded, nor did it contain incognizable acronyms. As a matter of "common experience," most individuals have had to read misspelled words and poorly constructed sentences. This interpretation did not require an expert witness, and the trial court did not abuse its discretion by allowing this lay testimony. Furthermore, the jury received photographs of the text messages that Captain Merritt

summarized, and they could determine for themselves the meaning of the messages. *See State v. Fusco*, 404 S.W.3d 504, 525 n.7 (Tenn. Crim. App. 2012) ("The precise meaning of this text was a determination for the jury; they were free to disregard the Defendant's testimony."). The trial court also gave the jury a curative instruction telling the jury they could view the text messages and determine for themselves the messages' content. Therefore, even if the testimony was improper, it was harmless error. *See* Tenn. R. App. P. 36(b).

### 3. Tennessee Rule of Evidence 403

Appellant also argues that the trial court should have excluded appellant's videotaped confession under Tennessee Rule of Evidence 403. However, appellant failed to object to the video's admission on the basis of Rule 403. *State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("[A] party cannot assert a new or different theory to support the objection . . . in the appellate court."). Therefore, he has waived consideration of this issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Appellant is without relief as to this issue.

### B. Ms. Collins's Statement

At trial, appellant also attempted to elicit testimony regarding whether during Ms. Collins's statement to police, she had claimed that she initiated the incident. The State objected because the questions called for hearsay testimony, and the trial court sustained the State's objections. Appellant now argues that Ms. Collins's statement should have been admitted into evidence as a statement against interest pursuant to Tennessee Rule of Evidence 804(3). However, appellant failed to make this argument in the trial court. Therefore, he has waived consideration of this issue. *See* Tenn. R. App. P. 36(a). Appellant is not entitled to relief as to this issue.

### CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE